## MONTGOMERY COUNTY v. THE BURLINGTON & MISSOURI RIVER RAILROAD COMPANY.

1. **Swamp lands:** INVESTMENT OF THE STATE WITH TITLE: CERTIFI-CATION. The title of the swamp and overflowed lands, granted to the State by act of Congress Sept. 28, 1850, remaining vacant and unappropriated, that had been selected and reported to the General Land Office, was, by the act of Congress, March 3, 1857, immediately vested in the State and the State could thereupon demand their certification. Following *Fremont Co. v. B. & M. R. R. Co.*, 22 Iowa, 91.

2. ———: CERTIFICATION: RAILROAD GRANTS. The act of the Commissioner of the General Land Office in certifying these swamp lands within the limits of the railroad grants, as a part of such grants, is in contravention of the vested rights of the counties and void.

3. ———: APPROPRIATION TO COUNTIES: TRUST. The appropriation by the State of the swamp lands to the counties, "for the purpose of constructing the necessary levees and drains to reclaim the same," is a sufficient execution of the trust under which the State received them from the general government.

### *Appeal from Montgomery District Court.*

### TUESDAY, APRIL 21.

THIS action is brought to quiet the title and possession in and of certain lands to which the plaintiff claims title under the Swamp Land Laws of the United States and of the State of Iowa, to which also the defendant claims title as a part of the railroad land grant made by Congress to the State by act of May 15, 1856. The court below rendered a decree for plaintiff from which defendant appeals.

*C. E. Richards* and *F. M. Stewart*, for appellant.

*Frank M. Davis* and *Mayne & McPherson*, for appellee.

MILLER, CH. J.—I. The facts in this case and the questions involved are substantially the same as in the cases of Fremont county v. the defendant in this case, and Mills county v. same, reported in 22 Iowa, 91. The plaintiff in this case claims the land under certain acts of Congress, and of the State legislature. By act of Congress of September 28, 1850, entitled " An Act

1. SWAMP LANDS: investment of the State with title: certification.

to enable the State of Arkansas and other States to reclaim the '*swamp land*' within their limits," the United States granted to the State of Iowa, among others, all the swamp or overflowed lands within the State which remained unsold at the passage of the act. Subsequently, by act of the General Assembly, the State granted the lands to the counties within which they were situated respectively. See Chapters 13 and 65, laws of the Fourth General Assembly; also Chapters 110 and 138, laws of the Fifth General Assembly. The plaintiff claims the lands in controversy under these and other acts of the national and state legislatures. The defendant claims the same lands as a part of the railroad land grant, so called, passed by Congress and approved May 15, 1856, and under an act of the General Assembly of Iowa, accepting said grant and granting a portion of the lands to the defendant. See Chapter 1, Laws of Extra Session of Fifth General Assembly. For a full legislative history, both national and State, of the swamp and railroad lands in the State of Iowa, see the opinion of the court in *Fremont County v. B. & M. R. R. Co., supra.* The evidence in this case shows that the lands in controversy were selected by the agents of the state as swamp or overflowed lands, and proof of their swampy character made in conformity with the rules and regulations of the Secretary of the Interior, and the laws of Iowa, substantially as were those of Fremont and Mills counties, as stated in the opinion in 22 Iowa, pages 117, 118 and 119. The swamp land list for Montgomery county was duly made and verified and sent to the Commissioner of the General Land Office at Washington, in January, 1857, and was on file in his office when the Act of Congress of March 3, 1857, was passed, by which the title to the swamp lands, thus selected, was vested absolutely in the several states, whether the lands contained in such lists were actually swampy or not, if they had been selected, listed and reported to the General Land Office before the passage of the act. See *Fremont Co. v. B. & M. R. R. Co., supra;* the same case, 9 Wallace, 89.

At the passage of this act no right of the defendant under the railroad grant had attached to these lands. The line or

route of the defendant's railroad was not definitely fixed until the 24th day of March 1857, "being subsequent to the act confirming irrevocably the title thereto as swamp lands." *Ibid*. The case comes completely within those of Fremont and Mills counties, *supra*, and on the authority of those cases, the right to the lands in controversy is in the plaintiff. They remained vacant and unappropriated, were selected and proved to be swamp lands, in the manner and according to the regulations prescribed by the Secretary of the Interior, as authorized by the Swamp Land Act of Congress, and were duly reported to the General Land Office prior to the passage of the confirmatory act of March 3, 1857, by which act the title to the lands immediately vested in the State, and it had the right then to demand their certification.

And, as held in the cases above cited, so we hold in this case, that the act of the Commissioner of the General Land

2. ——: certification: railway grant.

Office in certifying these lands to the defendant as a part of the railroad grant, being in contravention of the vested rights of the counties, was ineffectual and void.

II. Appellant insists, however, that since, under the act of September 28th, 1850, the swamp lands were granted to the

3. ——: appropriation to counties: trust.

State for certain specific purposes, the State took the title thereto as trustee, charged with the duty of executing the trust, and cannot delegate its powers and duties as such trustee to the counties, and as a consequence, cannot invest the latter with the title to the swamp lands. It may be conceded that the swamp lands were by the act of Congress granted to the State in trust for the objects mentioned in the act, but the State being a body politic, must necessarily execute the trust by means of agencies and instrumentalities. The purpose and object of the grant was "to enable the State to construct the necessary levees and drains to reclaim the swamp and overflowed lands therein." For this purpose the title to the lands was vested in the State, and made " subject to the disposal of the legislature thereof," and the only limitation contained in the act is as follows: "*Provided, however*, That the proceeds of said lands, whether, from

sale or by direct appropriation in kind, shall be applied, exclusively, as *far as necessary*, to the purpose of reclaiming said lands by means of levees and drains aforesaid." See Chap. 84 Acts of 31st Congress.

The power to sell the lands and devote the proceeds to their reclamation, or to appropriate the lands in kind for that object is fully given to the State. By the act of the General Assembly of January 13th, 1853, the State in the exercise of this power " appropriated the land in kind " to the respective counties of the State " for the purpose of constructing the necessary levees and drains to reclaim the same," and requiring that they should be first devoted to this purpose. Thus the State, by these instrumentalities, executes the trust confided to it by the act of Congress, in a manner fully authorized by that act. The judgment of the District Court will be

AFFIRMED.