PAGE COUNTY v. THE B. & M. R. R. Co.

1. **Swamp Lands:** PRESENT TITLE. The swamp land grant conferred by act of Congress, Sept. 28, 1850, operated *in presenti* to vest the title of the lands covered thereby in the State. The grant itself, without patent or conveyance, passed the title to the grantee.

2. ———: EVIDENCE. The selection and list of lands, made pursuant to the law of the State and the regulations of the land office, are *prima facie* evidence that the lands described as swamp are included in the grant.

3. **Estoppel:** TAXATION. The assessment of a tax, without enforcing its collection, will not estop a county from setting up the claim that the land included in the grant was its own property at the time of the levy.

4. **Action:** PARTY: INTEREST. One who has conveyed his interest in land cannot maintain an action to quiet title thereto upon grounds existing prior to the conveyance.

*Appeal from Page District Court.*

FRIDAY, JUNE 11.

ACTION in chancery to quiet in plaintiff the title of certain lands described in the petition. The defendant sets up title in itself to the lands, and as further defense to the action pleads that the lands, or a large portion of them, have been sold and conveyed by plaintiff, and others have been assessed and taxed, and defendant, as required by plaintiff, has paid the taxes thereon, whereby plaintiff is estopped to claim title thereto. A decree was rendered, after a trial upon the merits, granting the relief prayed for in the petition. Defendant appeals.

*Hepburn & Scott* and *B. F. Montgomery*, for appellant.

*W. W. Morsman*, for appellee.

Beck, J.—1.  This case involves conflicting claims of title by the respective parties to the same lands under separate congressional grants.  The plaintiff's title is based upon what is known as the swamp land grant by act of Congress of Sept. 28, 1850, while defendant claims under a grant of lands to the state of Iowa to aid in the construction of certain railroads by the act of Congress of May 15, 1856.  The property in dispute is claimed to be a part of the lands set apart by that act for the building of a railroad from Burlington to the Missouri River.  This legislation and other laws confirmatory thereof, as well as certain state laws to carry out the objects of these grants, and the executive construction and history thereof, have become familiar to the courts and profession of the state from the frequency that questions pertaining thereto have been considered and decided both by this court and the U. S. Supreme Court.  All facts pertaining to these matters are with great fullness stated, discussed and considered in *Fremont and Mills Co. v. the Burlington & M. R. R. Co.*, 22 Iowa, 91, s. c., 9 Wal., 89; *Adams Co. v. B. & M. R. R. Co.*, 39 Iowa, 507; *Montgomery Co. v. B. & M. R. R. Co.*, 38 Iowa, 208. The repetition here of what may be found in those cases is not demanded.

II.  It has been held by this court and the United States Supreme Court that the swamp land grant operated *in presenti* to vest the title of the lands covered thereby in the state; that the acquisition of title by the state did not depend upon any subsequent confirmatory legislation, or the action of executive officers of the government, but that "the act granting the swamp lands operated *ex proprio vigore* to pass the title at once.  The subsequent selection and patenting was required for the purpose of fixing the location and description."  *Allison v. Halfacre*, 11 Iowa, 45; *C., R. I. & P. R. Co. v. Brown*, ante p. 333; *Railroad Company v. Smith*, 9 Wal., 95; *Fremont and Mills Co. v. B. & M. R. Co.*, 22 Iowa, 91; *Fremont v. U. S.*, 17 Howard, 542; *Rutherford v. Green's Heirs*, 2 Wheat., 196; *Hornsby v. U. S.*, 10 Wal., 224.  The grant itself, without a patent, conveyance, or any formal assurance, passed the title to the grantee.

*1. SWAMP LANDS: present title.*

*Courtright v. The C. R. & M. R. Co.*, 35 Iowa, 386; *The C., R. I. & P. R. Co. v. Brown, ante* p. 333.

III. Our next inquiry is this: Are the lands in controversy a part of those covered by the grant, or, in other words, are they swamp lands? This question must be answered before we can determine whether they passed under the grant.

The record before us contains evidence that the lands were examined by the surveyor of Page county, and a list thereof 2. ———: duly reported to the secretary of state and by him evidence. transmitted to the surveyor general of the United States, and by the last named officer forwarded to the general land office. The list contained a description of the lands, showing their swampy character, and that they belonged to the class of lands granted by the act of Congress, and was duly verified by the oath of the officer making it. It was regarded by the proper department of the general government as the list and selection of swamp lands for Page county, and the lands described therein were withdrawn from sale at the proper U. S. Land offices. The selection and list were made pursuant to a law of the state, and in conformity with the regulations and rules prescribed by the commissioner of the general land office and other executive officers of the United States having authority in the matter. In short, the law and all the regulations applicable to the business and prescribing the evidence upon which the swampy character of the lands should be determined, were complied with, and they were thereon held by the officers of the government to be swamp lands. The acts of these officers, state and federal, in selecting and setting apart the lands under the grant and their official certification of their swampy character must be regarded as *prima facie* evidence, at least, that they are swamp lands. There is not one word of contradictory evidence upon this point to be found in the record. The lands are sufficiently shown by the evidence before us to be swamp lands and within the congressional grant.

The swamp lands granted to the state were, by act of the General Assembly of February, 1853, conferred upon the counties in which they were situated. The plaintiff's title

therefore to the lands in question was acquired long before the congressional grant in aid of railroads under which defendant claims. In view of these facts, it becomes unnecessary to consider the various questions of fact and law involving the time when defendant's line of railroad was permanently located, and at what date it acquired title to the lands covered by the grant to it by the state and by Congress. It cannot be claimed, nor is it, that the defendant's title vested prior to the swamp land grant to the state and the grant by the state to the counties. By the last named grant plaintiff's title vested.

IV. It is claimed that the defendant has paid taxes assessed by plaintiff upon the lands, or a part of them, and thereby

3. ESTOPPEL: taxation. plaintiff is estopped to set up title against defendant to such lands. The lands, or portions of them, were, prior to 1869, assessed by the county to defendant and others, and three or four tracts were sold for taxes and defendant redeemed them from the sales. But prior to 1870 defendant commenced a suit against the county to restrain it from collecting taxes levied upon its lands situated therein. It held a large quantity of lands under the railroad grant to which the county set up no claim as swamp lands. Taxes were assessed upon those lands and some of the swamp lands were listed to defendant. It will be remembered that the lands in controversy are claimed by defendant under the railroad grant, and this grant was the foundation of its claim to all lands in the county. The injunction to restrain the taxation of defendant's land was asked for in the suit on the ground that defendant had not acquired a taxable interest in the lands. Attached to plaintiff's petition was a list which defendant averred and claimed contained all the lands in the county to which it was entitled under the railroad grant. In this list none of the lands in controversy appear. In January, 1870, there was a settlement had between the county and defendant of the subject of this action, and it was agreed between the parties that all the lands of defendant appearing upon the tax books should be stricken therefrom as having been erroneously assessed, and all taxes and penalties accruing

prior to the year 1869 were released. Upon this settlement the defendant paid plaintiff, by way of a compromise, the sum of $9000. Now it is very plain that, as none of the lands in controversy were included in this suit and compromise, for they were not claimed by defendant nor made the subject of settlement, the payment of the $9000 was not on account of any taxes assessed thereon. It is shown, by the evidence of the county treasurer, that after and including the year 1869 the defendant paid no taxes upon any of the lands in suit. For that year and subsequent years the lands were assessed, but it is impossible to conclude from the abstract that any of them were assessed as lands of defendant, except it *is* shown that the SE. ¼ of NE. ¼ 29, 70, 36, was so assessed for the year 1871. The evidence clearly shows, however, that no taxes since 1868 have been paid by defendant on any of the lands. Defendant then fails to make out a case of estoppel under the rule recognized in *Adams Co. v. B. & M. R. Co.*, 39 Iowa, 507, and *The Iowa R. L. Co. v. Story Co.*, 36 Iowa, 48, for payment of the taxes, an essential ingredient, is wanting. It is very plain that the mere assessment of lands, which may be done through mistake or without authority on the part of the county officer charged with that duty, ought not to bind the county—certainly not when the other party has not acted thereon and parted with his money or changed his position as to his rights, an element always required to support an estoppel.

V. Four or five of the tracts of land in controversy were sold in 1864, for the taxes of 1861 and 1862. It is shown that they were assessed for the taxes of 1862 to unknown or non-resident owners. The abstract fails to inform us as to whom they were assessed for 1861. We cannot presume that they were assessed for that year to defendant. In 1867 defendant redeemed these tracts from the tax sale, and a certificate was issued accordingly. They were not claimed by defendant in the action brought by it to restrain the collection of taxes, nor included in the settlement above referred to, and, it is shown, that since 1868 no taxes have been paid thereon by defendant.

Without determining the effect of the redemption in 1867, if followed up by a continuous claim of title to the land and the payment of taxes thereon, we are very clear that without these things an estoppel in defendant's favor does not arise against plaintiff whereby it is now prevented setting up title to the lands. Defendant's disclaimer, implied if not express, of title to these lands in the action and settlement above mentioned, its failure or refusal to recognize the land as its property by the payment of taxes from that day to the commencement of the suit, taken with other matters appearing in the record, must be regarded as evidence of an abandonment of its claim set up to the land by the redemption from the tax sale. It is entitled, however, to recover the amount paid for the redemption, with interest.

It is claimed by defendant that plaintiff has sold and conveyed the lands in controversy, and is therefore not entitled to the relief prayed for—having no interest in the subject matter of the action. In the argument it insisted 4. ACTION: party: interest. that the lands were conveyed by the county to the American Emigrant Company. There is not a particle of evidence to support this claim. It needs no further mention. It is shown, however, that plaintiff had sold and conveyed, prior to the commencement of this suit, the lands set out in the list appended to this opinion; it is not entitled to the relief prayed for in the petition as to these lands.

The decree of the District Court will be affirmed with this modification. The lands sold by the county will be excluded from the operation of the decree. They are ascertained and described in the accompanying list, which will serve as a guide in drawing the decree. The defendant will recover of plaintiff the amount paid for redeeming from the tax sale the lands mentioned above. The judgment will be for the sum of $109.14 with interest at six per centum per annum from June 19, 1867, the date of this redemption. In other respects the judgment of the District Court is affirmed, and a decree will be entered in this court conforming to this opinion.

MODIFIED AND AFFIRMED.