THE COUNTY OF BUENA VISTA v. THE I. F. & S. C. R. Co.

1. **Practice:** NEW TRIAL: DEFENSE TO APPLICATION FOR. Section 3268 of the Code does not contemplate a trial upon an application for a new trial made under its provisions, and it is not error to refuse to permit a party to answer and controvert such application.

2. **Swamp Lands:** PROOF OF SELECTION: EVIDENCE. The authority of agents appointed by the county court, under section 927 of the Revision, to select swamp lands should appear by the records of the court; where such authority appeared only by the affidavit of a former county judge, made and attached to the list subsequent to the selection, and it did not appear that the list had ever been forwarded to and approved by the surveyor-general, or the land department of the United States, it was held incompetent as evidence of title in the county.

*Appeal from Buena Vista District Court.*

SATURDAY, DECEMBER 11.

THIS action was commenced in equity on the 2d day of October, 1876, to establish the plaintiff's title to certain alleged swamp lands, in the petition described. The relief asked by the plaintiff was granted as to a part of the lands in controversy, and denied as to the residue. Both parties appeal. The facts are stated in the opinion.

*Galusha Parsons*, for the plaintiff.

*G. S. Robinson* and *E. S. Bailey*, for the defendant.

DAY, J.—The plaintiff, in its petition, claims to be the owner in fee simple of the lands in dispute under the swamp land grant of September 28, 1850; that each parcel thereof was of the description specified by said Act of Congress, and was duly listed and selected as such; that the secretary of the interior refused to take up, examine and allow the list, and such refusal was wholly by reason of defendant's resistance; that the commissioner decided to allow said lists, but the secretary of the interior, on appeal, reversed said decision

and directed him to proceed no further; that the said lands were, without authority, on the 5th of July and the 10th of August, 1871, patented by the governor of Iowa to the defendant, and the patents are recorded in the office of the recorder of deeds for the county of Buena Vista. The plaintiff asks for a décree quieting and establishing the title in itself, declaring the said patents void, and that the defendant holds the title in trust for plaintiff, and requiring the defendant to account for the moneys received from sales of said land.

The defendant, in the first division of its answer, admits the issuance of the patents, and that it claims said lands, and denies all the other allegations of the petitition.

In the second division of its answer the defendant sets out the acts of Congress and of the legislature of Iowa, conferring lands upon the defendant, and the acts and proceedings thereunder, and the issue of the patents to the defendant in pursuance thereof, and that the county had for several years levied and collected taxes on said lands of defendant, and is thereby estopped from claiming the same.

The plaintiff demurred to the second division of the defendant's answer, and the demurrer was, in the court below, sustained. From the order sustaining the demurrer the defendant appealed to this court, in which the judgment of the court below was affirmed, solely upon the ground that the facts alleged in the seventh paragraph of the answer, to-wit., the levy and collection of taxes, did not estop the county from claiming title to the lands. See 46 Iowa, 226.

At the June term, 1877, of the District Court, no one appearing for the defendant, judgment was rendered in favor of plaintiff for all the land claimed and for about $20,000 in money.

On the 17th day of July, 1877, the defendant filed a petition for a new trial, accompanied with exhibits and affidavits. The plaintiff demurred to this petition, and the court sustained the demurrer, with leave to the defendant to amend the petition. Thereupon the defendant filed an amended petition

and application for a new trial, to which, also, the plaintiff demurred. The court sustained this demurrer upon the ground that the granting of a new trial is not within the discretion of the court, but is governed by Title XIX of the Code. On appeal to this court the order sustaining the demurrer was reversed. 49 Iowa, 657. On the 21st day of May, 1879, the plaintiff filed an answer to the petition and application for a new trial, denying several of its material allegations, and setting forth affirmatively the facts under which plaintiff claims its title to the lands. On the same day the defendant moved the court to strike this answer from the files, and to enter an order for a new trial. The court sustained this motion and ordered a new trial upon the defendant's paying to pláintiff the sum of $250, as attorney's fee upon the first trial, and the costs of such trial. From this order the plaintiff thereupon immediately appealed to this court. Thereupon the plaintiff moved the court for leave to controvert the allegations of defendant's petition for a new trial by affidavits, depositions, or oral testimony, or in any way the court may designate. This motion was denied, and the plaintiff excepted.

Afterward, on the same day, the defendant brought into open court the sums ordered to be paid as aforesaid, and the clerk paid to Galusha Parsons, the attorney of plaintiff, the said sum of $250, and took his receipt therefor. The defendant thereupon filed an additional and supplemental answer, alleging the levy and collection of taxes upon said lands by plaintiff, and the payment thereof by the defendant; that the lands were patented to defendant and claimed by it under the several acts of Congress and of the legislature, and asking that if any of said lands are adjudged to plaintiff, that the taxes paid on them be refunded, with interest. The cause was tried to the court, and a decree was entered quieting in the plaintiff the title to a part of the lands, and awarding to the defendant the taxes paid thereon, with interest at six per cent.

I. It is claimed by the plaintiff that the application for a

new trial was improperly granted.    Most of the positions as-

**1. PRACTICE:
new trial:
defense to
application
for.**

sumed by the plaintiff were determined adversely to it on the former appeal.    49 Iowa, 657.    The only position of the plaintiff which requires no-tice is that the plaintiff should have been allowed to answer the petition or application for a new trial, and have a trial of the issue thus raised.

1.    Upon the former appeal it was·held that the proceeding instituted by plaintiff is within the contemplation of the last four sections of chapter 2, title 20, of the Code, and that the defendant's application for a new trial falls under the provis-ions of section 3268 of the Code.    This section authorizes the court, in its discretion, upon the application of a party made .at any time within a year from the former trial, to grant a new trial, although the grounds required for a new trial in other cases be not shown.    The section does not seem to contemplate any notice to or defense by the other party, for section 3269 provides that if the application for a new trial is made after the close of the term at which the judg-ment was rendered, the party obtaining a new trial shall give the opposite party ten day's notice thereof before the term at which the action stands for trial, a proceeding altogether un-necessary and unmeaning if the party is allowed to take issue upon and defend against the application.

2.    The amount of money which the defendant was re-quired to pay as a condition of being allowed a new trial was paid over to the plaintiff's attorney, and by him receipted for.    The plaintiff cannot accept the benefits of the judg-ment, so far as favorable to it, and at the same time prosecute an appeal from the judgment.    *Ind. Dist. of Altoona v. The District Township of Delaware*, 44 Iowa, 201.

II.    The defendant claims the land in controversy under an act of Congress approved May 15th, 1856, making a grant

**2. SWAMP
lands : proof
of selection :
evidence.**

of lands to the State of Iowa, in alternate sec-tions, to aid in the construction of certain rail-roads in the State, and certain acts of the general

assembly of the State of Iowa. On the 23d day of December, 1858, the commissioner of the general land office certified all the lands in controversy as enuring to the State of Iowa under said grant of May 15th, 1856. On the 27th day of December, 1858, this certification was duly approved by the secretary of the interior. On the 5th day of August, 1871, Samuel Merrill, governor of the State of Iowa, patented a portion of the lands in controversy to the defendant, and on the 10th day of August, 1871, the said governor of Iowa patented the remainder of said lands to the defendant. By the certification of the commissioner of the general land office, the approval of the secretary of interior, and the patents of the governor of Iowa, the legal title to all the lands in dispute has become vested in the defendant. This legal title the plaintiff seeks to have set aside and vested in itself.

The plaintiff claims the lands in controversy under an act of Congress approved September 28th, 1850, to enable the State of Arkansas and other States to reclaim the swamplands within their limits, and an act of the general assembly of the State of Iowa, passed January 13th, 1853, Revision, section 925, granting to the counties respectively in which they may lie, all the swamp-lands granted to the State of Iowa by the acts of Congress, approved September 28th, 1850. The act of Congress of September 28th, 1850, grants to the States in which they may be situated the whole of those swamp and overflowed lands made unfit thereby for cultivation which shall remain unsold at the passage of the act. It requires the secretary of the interior to make out an accurate list and plats of the lands described, and, at the request of the governor of the State, to cause a patent to be issued to the State therefor, which shall vest the fee-simple in the State, subject to the disposal of the legislature thereof. It provides that in making out said lists and plats all legal sub-divisions, the greater part of which is wet and unfit for cultivation, shall be included, but that when the greater part of a sub-

division is not of that character, the whole of it shall be ex-cluded.

The commisssioner of the general land office, on the 21st day of November, 1850, directed the making out of the list prescribed and furnished instructions to the surveyor-general at Dubuque as follows: "You will please make out a list of all the lands thus granted to the State, designating those which have been sold or otherwise disposed of since the pas-sage of the law, and the price paid for them when purchased. The only reliable data in your possession from which these lists can be made out are the notes of the surveys on file in your office, and if the authorities of the State are willing to adopt these as the basis of those lists, you will so regard them. If not, and those authorities furnish you satisfactory evidence that any lands are of the character embraced by the grant, you will so report them."

The State of Iowa was not willing to accept the notes of the surveys on file in the surveyor-general's office, and on January 13th, 1853, passed an act authorizing the county courts of the respective counties to appoint some suitable per-son to examine the lands and make due report and plats, upon which the topography of the country should be carefully noted, to said courts, which were required to transmit to the proper officers lists of all of said swamp lands in order to procure a proper recognition of the same on the part of the United States. Revision, § 927.

On the 8th day of November, 1853, the surveyor-gen-eral directed a communication to the secretary of State of Iowa, urgently requesting his active cooperation in closing up the swamp land business, and accompanying it with a form of proof to be employed by the agent of the county and returned to that office for approval.

On the 25th of January, 1855, the general assembly of the State of Iowa passsed an act authorizing the governor to adopt such measures as to him might seem expedient to pro-vide for the selection of the swamp lands of the State, and to

secure the title therefor. Revision, § 955. After the passage of this act the attention of the county judges was repeatedly called to this subject by the governors of the State, and they were urged to make the proof necessary to entitle them to the lands.

The petition alleges that each and every parcel of the lands in controversy was, at the date of the passage of˙said act, of the description specified therein; that in 1859 the plaintiff caused a list of said lands to be made in accordance with the act of Congress and the rules and regulations of the general land office of the United States, but˙has not been able to have the sufficiency thereof examined, passed upon and approved. Under the issue presented it, is clearly incumbent upon the plaintiff, in order to the recovery of any forty acre tract in controversy, to prove that the greater part of it was, on the 28th day of September, 1850, wet and unfit for cultivation. To prove the swampy character of the lands in question, the plaintiff introduced a list of the swamp and overflowed lands situated in the county of Buena Vista, embracing the lands in controversy, and recorded in the office of the register of the State land office of Iowa. This list is verified by the affidavits of G. S. Ringland, W. H. Hait, and Zach. Tucker, who assert in their affidavits that they were appointed by the, county judge of Buena Vista county to select the swamp and overflowed lands in said county; that they understand and have examined the lines bounding each of the tracts designated in the list, and that the greater˙part of each and every forty acre tract or smallest legal subdivision is swamp and overflowed land, and of the character embraced in the act of Congress, approved September 28th, 1850. Attached to this list is the affidavit of J. W. Tucker, as follows: " I, J. W. Tucker, late county judge of Buena Vista county, in the State of Iowa, do solemnly swear that George S. Ringland, Zachariah Tucker, and W. H. Hait, were duly appointed by me, while county judge of said county of Buena Vista, as agents to select the swamp and overflowed lands in Buena Vista

county aforesaid, and that the agents aforesaid are reliable and responsible men; and I do further swear that the within is the original report of said agents, and that the correctness of the report has been sworn to by the said agents as will more fully appear by the affidavits hereto attached; the reason that I do not certify said report is that since employing said agents I have removed from said county of Buena Vista to the county of Black Hawk, in said State." The jurat to this affidavit is dated December 26th, 1859.

This testimony was admitted against the objection of the defendant as to its competency, and it is now insisted that it is both incompetent and insufficient to establish the swampy character of the lands in question.

We think the evidence incompetent upon several grounds. Section 927 of the Revision requires that the agent shall be appointed by the County Court at a regular term thereof. The proper evidence of the appointment is the production of the record of the County Court. If no record was made, or it has been lost, the written appointment of the agent should be produced. If that is not attainable, and parol evidence of the fact of appointment is proper, the evidence should be the testimony of witnesses, subject to cross-examination, and not the mere *ex parte* affidavit of the person making the appointment.

This section does not provide that the lists so made shall be evidence of any fact. They are authorized to be made merely for the purpose of procuring the proper recognition of the same on the part of the United States, and are in the nature of a claim or demand. The lists are required to be transmitted by the County Court to the proper officers for approval. The regulations and instructions of the Department show that this person is the surveyor-general. There is no proof that the list in question was ever transmitted to the surveyor-general, or that he ever had any opportunity of passing upon it. It is not shown that this list ever came into the possession of the commissioner of the general land

office or of the secretary of the interior, or that its correctness or validity was at any time recognized by any department of the government. It is true the surveyor-general, under instructions from the departments of the government, submitted forms for proof, but his instructions required that the proofs made should be transmitted to his office for approval, and to aid him in making up the lists of land embraced in the grant, which is not shown by the evidence to have been done. So far as the evidence shows, the list constitutes no more than the claim of Buena Vista county, which has never been recognized, approved or allowed by any department of the Government. That it is exceedingly inaccurate and unreliable is evidenced by the fact that whilst it embraces five hundred and fifty-one tracts, the defendant established affirmatively and satisfactorily that three hundred and ninety-eight of them are high and dry, and fit for cultivation.

The evidence falls very far short of what was held sufficient *prima facie* evidence of the swampy character of the lands in *Page County v. B. & M. R. R. Co.*, 40 Iowa, 522. In that case the lists, prepared under the authority of the county, were transmitted to the surveyor-general, and by him forwarded to the general land office. It was regarded by the proper department of the general government as the list and selection of lands for Page county, and the lands described therein were withdrawn from sale at the proper United States land offices.

The case of *Clarkson v. Buchanan*, 53 Mo., 563, cited and relied upon by the plaintiff, is not in point. A statute of the State of Missouri, page 868, section 9, provides that lists and plats of the swamp lands received from the government of the United States, shall, by the governor, be caused to be filed in the office of the register of lands, and shall be received by all courts of the state as *prima facie* evidence of title. A certified copy of the list of swamp lands on file in the office of the register was offered in evidence, and it was

held thet the presumption was that the list was legally and correctly there. In this case it is shown affirmatively that the proper departments of the United States refused to recognize or approve the lists prepared by the county. There cannot, therefore, be any presumption exercised in their favor.

Besides, in *Clarkson v. Buchanan,* the lists were not offered or accepted to prove that the lands were wet and subject to overflow. That fact was proved by independent testimony produced at the trial. None of the authorities cited by the plaintiff, as we understand them, sustain the sufficiency of the lists in question to establish the swampy character of the land.

As the plaintiff failed to prove, by competent and sufficient testimony, that any of the lands in question are swamp and fall within the terms of the grant of September 28, 1850, the petition should have been dismissed.

On plaintiff's appeal affirmed.

On defendant's appeal the decree is

REVERSED.