# BUENA VISTA COUNTY *v.* IOWA FALLS & SIOUX CITY RAILROAD COMPANY.

IN ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

Argued October 31, 1884.—Decided November 10, 1884.

The right of review of the official acts of the Commissioner of the Land Office conferred upon the Secretary of the Interior by general laws extends to acts of the Commissioner under the act of March 5, 1872, 17 Stat. 37, directing him to receive and examine selections of swamp lands in Iowa, and allow or disallow the same.

The facts in this case do not estop the defendant in error from objecting to the list of swamp lands in Buena Vista County, which was filed by the agent of the county in the office of the Surveyor-General in Iowa in accordance with provisions of a law of that State.

This suit in equity was commenced by the plaintiff in error, who was plaintiff below, in the District Court of Buena Vista County, in the State of Iowa, for the purpose of establishing its equitable title in fee simple to five hundred and fifty-three forty-acre tracts of land, lying within its limits, and seeking a conveyance of the legal title thereto, held by the defendant.

It was claimed that the lands in question were granted by the Swamp-land Act of September 28, 1850, 9 Stat. 519, to the State of Iowa; all such lands having been granted by the State by an act passed January 13, 1853, to the counties respectively in which the same were situated.

The bill of complaint further alleged as follows:

"V. That each and every parcel of said lands was of the description specified in said act of Congress at the date of the passage thereof; that afterwards, to wit, in the year eighteen hundred and fifty-nine, the plaintiff caused a list of said lands to be made in legal subdivisions in all respects in accordance with the requirements of the said act of Congress and the rules and regulations of the General Land Office of the United States; that the said list, with the proper proof thereunto attached, was duly filed in the office of the Secretary of State of the State of Iowa on or about the first day of January, 1860, and was thereafter duly recorded in the office of the register of the State land office, and thereafter filed in the office of the Surveyor-General of the United States for the State of Iowa, and thereafter, to wit, in the month of January, 1866, the same was duly filed in the office of the Commissioner of the General Land Office of the United States, where it has ever since remained on file.

"VI. That from time to time, since the filing of said list in said last-mentioned office, the plaintiff has applied to the said Commissioner of the General Land Office to examine and pass upon the sufficiency thereof and to allow the same; that prior to the 7th day of July, 1875, it was wholly unable to

obtain any hearing or decision thereon. That the defendant, by its agents and attorneys, appeared before said commissioner and resisted said application, and the said refusal to take up and examine said list was wholly by reason of defendant's resistance thereto and its claim to said lands. That upon the day last aforesaid the said Commissioner decided to allow plaintiff's said list ; that defendant appealed from said decision to the Secretary of the Interior, who, upon the 30th day of August, 1876, reversed the decision of said Commissioner, and directed him to take no further proceedings upon plaintiff's application for the examination and allowance of said list.

"VII. Plaintiff further says that upon the 5th day of July, 1871, the Governor of the State of Iowa, without being in any way authorized so to do, issued to the defendant a patent for a part of said lands, which said patent is now of record in the office of the register of the land office of the said State, at page two hundred and fifty-two of record 'A, Miscellaneous Conveyances.' That on the 10th day of August, of said year, he issued a patent to said defendant for all the remaining lands aforesaid, which is recorded in the book aforesaid at page two hundred and eighty-three. That both of said patents are recorded in the office of the recorder of deeds for said county of Buena Vista. That said patents are a cloud upon the title of the plaintiff and wholly prevent it from making sale of its said lands, and greatly impair the value of its property therein."

The defendant claimed title to the lands in dispute in itself, and denied the plaintiff's equitable title and the material facts upon which it was based.

The defendant's title was derived through a grant made by an act of Congress, passed May 15, 1856, to the State of Iowa, to aid in the construction of certain railroads, which was accepted by the State and by it granted to a company whose line was located through Buena Vista County, whereby the limits of the grant were determined so as to embrace the lands described in the plaintiff's petition. Thereafter, on February 28, 1858, the same were certified by the Secretary of the Interior to the State as inuring to it under said grant, and were accepted by it and passed by subsequent legislative grants from the

State to the defendant in error, to whom patents for the land were issued in the name of the State by the governor. It was not denied, however, that, if the lands in controversy passed by the swamp-land grant of 1850, they were excepted out of the subsequent railroad grant, which is the foundation of the defendant's title.

The terms of the act of Congress of September 28, 1850, granted to the several States within which they were situated " the whole of those swamp and overflowed lands, made thereby. unfit for cultivation, which shall remain unsold at the passage of this act." It was thereby made the duty of the Secretary of the Interior, as soon as practicable after the passage of the act, to make out an accurate list and plats of the lands described as aforesaid and transmit the same to the governor of the State, and at his request to issue a patent to the State therefor; but " in making out a list and plat of the land aforesaid all legal subdivisions, the greater part of which is wet and unfit for cultivation, shall be included in said list and plats; but when the greater part of a subdivision is not of that character, the whole of it shall be excluded therefrom." The legal subdivisions contemplated by the law were forty-acre tracts.

The first instructions issued by the Commissioner of the General Land Office, on November 21, 1850, in execution of this act, directed the Surveyors-General to make out lists of the lands in each State falling within the description of the grant, based upon the notes of surveys in their offices, provided the authorities of the States were willing to adopt them; " if not, and those authorities furnish you satisfactory evidence that any lands are of the character embraced by the grant, you will. so report them." Provision was made for surveys to be made to determine the boundaries of the swamp or overflowed lands, where the State authorities concluded to have them made, and it was added that " the affidavits of the county surveyor, and other respectable persons, that they understand and have examined the lines, and that the lands bounded by lines thus examined, and particularly designated in the affidavit, are of the character embraced by the law, should be sufficient. The line or boundary of the overflow that renders the land unfit for

regular cultivation may be adopted as that which regulates the grant." The lists were to be made out on forms prescribed for that purpose, and transmitted to the department, the lands selected reserved from sale, and the selections, when approved by the Secretary of the Interior, were directed to be entered by the register as granted to the State.

The State of Iowa adopted the alternative of making its own designations of lands, claimed by it as corresponding to the description of the grant, and passed, at different times, laws directing by whom they should be made. A statute of 1853 required a full and complete return of the examination and survey of the swamp and overflowed lands, when completed by the county surveyor or other person appointed for that purpose, to be forwarded to the Secretary of State, whose duty it was to report the same to the Surveyor-General.

A subsequent statute, passed January 25, 1855, authorized the governor to adopt such measures as to him might seem expedient to provide for the selection of the swamp lands of the State, and to secure the title thereto. The governor accordingly issued circulars, one in 1855 and one in 1858, to the county judge of the several counties, requesting the selection to be made in his county by the county surveyor or other agent, the lists thereof to be forwarded to the Surveyor-General or to the Secretary of State of Iowa, to be by him forwarded to the proper department for recognition and approval. The act of January 13, 1853, was carried into the Revised Statutes of the State of 1860, as follows:

" SECTION 927. In all those counties where the county surveyor has made no examinations and reports of the swamp lands within his county, in compliance with the instructions from the governor, the county court shall, at the next regular term thereof, after the taking effect of this act, appoint some competent person, who shall, as soon as may be thereafter, after having been duly sworn for that purpose, proceed to examine said lands and make due reports and plats, upon which the topography of the country shall be carefully noted, and the places where drains or levees ought to be made marked on said plats, to the county courts respectively, which courts shall

transmit to the proper officers lists of all said swamp lands in each of the counties, in order to procure the proper recognition of the same on the part of the United States, which lists, after an acknowledgment of the same by the general government, shall be recorded in a well-bound book provided for that purpose, and filed among the records of the county court."

On the trial of the cause, in the District Court of Buena Vista County, the plaintiff offered in evidence a paper, claimed to be a certified copy of plaintiff's list of swamp-land selections and accompanying proofs. It was headed, " A list of the swamp and overflowed lands situated in the county of Buena Vista and State of Iowa." Then followed a list containing a description, among others of all the lands described in the plaintiff's original petition or complaint. To this were annexed affidavits by George S. Ringland, W. H. Hait, and Zachariah Tucker, stating that, having been appointed by the county judge of Buena Vista County to select the swamp and overflowed lands in said county, " do solemnly swear that we understand and have examined the lines bounding each of the tracts of land particularly designated in the foregoing list, and we do further solemnly swear that the greater part of each and every forty-acre tract or smallest legal subdivision therein named is swamp and overflowed land, and of the character embraced in the act of Congress approved the twenty-eighth day of September, 1850." And then appeared the following:

" STATE OF IOWA,        } ss. :
    *Black Hawk County,*   }

" I, J. W Tucker, late county judge of Buena Vista County, in the State of Iowa, do solemnly swear that George S. Ringland, Zachariah Tucker, and W. H. Hait were duly appointed by me while county judge of said county of said Buena Vista as agents to select the swamp and overflowed lands in Buena Vista County aforesaid, and that the agents aforesaid are reliable and responsible men ; and I do further swear that the within is the original report of said agents, and that the correctness of the report has been sworn to by the said agents, as will more fully appear by the affidavits hereto attached ; the

reason that I do not certify said report is that since employing said agents I have removed from said county of Buena Vista to the county of Black Hawk, in said State; so help me God.

J. W. TUCKER."

" Sworn to and subscribed before me this twenty-sixth day of December, A.D. 1859.   Witness, J. B. Severance, clerk of the District Court of Black Hawk County, Iowa, and the seal of said court affixed, this twenty-sixth day of December, A.D. 1859, in said county and State.   ———— ————."

[L. S.]

"STATE OF IOWA, STATE LAND OFFICE.

" I hereby certify that the foregoing report of the swamp-land selections in Buena Vista County is recorded in this office in book ' B,' pages one hundred and ninety-three to two hundred and twenty-eight, inclusive.   J. B. MILLER, *Register*."

The introduction of this paper as evidence was objected to by the defendant below on the several grounds that the persons appearing to have made the selections had not been appointed by the County Court of Buena Vista County; that there were no plats accompanying it; that there was no evidence of the appointment of the persons claiming to have examined the lands; that the affidavit of J. W. Tucker was not verified and was not competent evidence of the facts it recites; that it was not shown that the said selections were ever filed in the proper offices or were ever approved by any officer of the State of Iowa or of the United States.

The paper, however, notwithstanding these objections, was received in evidence; but no other proof was offered by the plaintiff that the lands in controversy were in fact swamp or overflowed lands, so as to be unfit for cultivation within the description of the act of Congress of September 28, 1850, at the date of its passage.

The District Court rendered a judgment in favor of the plaintiffs, and the whole case, upon the evidence, reduced to writing and embodied in the record, was taken by appeal to the Supreme Court of the State.

That court reversed the judgment of the District Court, on

the ground that the list of lands on which it was based was improperly admitted in evidence, and rendered a judgment in favor of the defendant, dismissing the plaintiff's petition.

To reverse that judgment this writ of error was prosecuted.

*Mr. Galusha Parsons* for plaintiff in error.

*Mr. E. E. Bailey* for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court. He stated the facts in the foregoing language and continued:

The grounds on which the Supreme Court of Iowa proceeded are stated in its opinion, reported in 55 Iowa, 157, as follows:

" We think the evidence incompetent upon several grounds. Section 929 of the revision requires that the agent shall be appointed by the County Court at a regular term thereof. The proper evidence of the appointment is the production of the record of the county court. If no record was made, or it has been lost, the written appointment of the agent should be produced. If that is not available, and parol evidence of the fact is proper, the evidence should be the testimony of witnesses subject to cross-examination, and not the mere *ex parte* affidavit of the person making the appointment. This section does not provide that the lists so made shall be evidence of any fact. They are authorized to be made merely for the purpose of procuring the proper recognition of the same on the part of the United States, and are in the nature of a claim or demand. The lists are required to be transmitted by the County Court to the proper officers for approval. The regulations and instructions of the department show that this person is the Surveyor-General. There is no proof that the list in question was ever transmitted to the Surveyor-General, or that he ever had any opportunity of passing upon it. It is not shown that this list ever came into the possession of the Commissioner of the General Land Office, or of the Secretary of the Interior, or that its correctness or validity was at any time recognized by any department of the government. It is true the Surveyor-General, under instructions from the department of the government, submitted forms of proof; but his instructions required

that the proofs made should be transmitted to his office for approval, and to aid him in making up the lists of lands embraced in the grant, which is not shown by the evidence to have been done. So far as the evidence shows, the list constitutes no more than the claim of Buena Vista County, which has never been recognized, approved, or allowed by any department of the government. That it is exceedingly inaccurate and unreliable is evidenced by the fact that, while it embraces 551 tracts, the defendant established affirmatively and satisfactorily that 398 of them were high and dry, and fit for cultivation."

In opposition to this conclusion, it is now claimed by the plaintiff in error that the list of lands in question was not only erroneously ruled out as incompetent evidence, but that it ought to have been accepted as sufficient and conclusive proof that the lands embraced in it were within the grant of swamp and overflowed lands, thus establishing the title of the plaintiff in error.

This proposition is supposed to be supported by facts connected with the history of this list, and the mode in which it has been dealt with by the State authorities, the General Land Office, and the representatives of the defendant in error, whereby it is alleged an estoppel has arisen against the last named to deny the legal effect claimed for it. These facts appear in official correspondence and documents which were admitted in evidence, showing the various efforts made on behalf of the county to obtain a recognition of its claim by the Interior Department and the decisions of that department which resulted in their failure.

It thus appears that a list of selections for Buena Vista County was delivered to the Surveyor-General, but not filed by him in the General Land Office, but was rejected because the lands were not both swamp and overflowed, the Commissioner of the Public Lands having issued instructions that no lands came within the grant except such as were both swamp and overflowed. This ruling of the Commissioner, however, was reversed by the Secretary, September 15, 1860. The Buena Vista list remained in the office of the Surveyor-General, without

further action thereon, until that office, in 1866, was abolished, when, with all other lists remaining there, it was removed to the General Land Office. In 1869 an application was made by an agent of the State, to the Commissioner of the Land Office, to confirm the selections according to this list, which application was rejected on the ground, "that the established method of making swamp selections was through the Surveyor-General, and that the list in question was never reported by him, but came before this office by the removal of the archives of the Surveyor-General's office; that to receive them now would be in the nature of new selections, from which we are barred by the limitations of the act of March 12, 1860, 12 Stat. 3." That act required that all selections to be made thereafter from lands already surveyed under the act of September 28, 1850, should be made within two years from the adjournment of the legislature of the State at its next session after the date of the act. Upon appeal to the Secretary of the Interior, this decision of the Commissioner was affirmed, October 23, 1871. On March 5, 1872, an act of Congress took effect, 17 Stat. 37, which enacted, "That the Commissioner of the General Land Office is hereby authorized and required to receive and examine the selections of swamp lands in Lucas, O'Brien, Dickinson, and such other counties in the State of Iowa as formerly presented their selections to the Surveyor-General of the district including that State, and allow or disallow said selections and indemnity provided for according to the acts of Congress in force touching the same at the time such selections were made, without prejudice to legal entries and rights of *bona fide* settlers under the homestead or pre-emption laws of the United States at the date of this act."

An application was made under this act, on April 21, 1875, to the Commissioner of the General Land Office to adjust the claims of the county for swamp lands on the basis of its lists theretofore filed. Upon this application the Commissioner, on July 7, 1875, notified the railroad companies, to which in the mean time the lands in question had been certified as embraced in the grant to them, that his office had no right to refuse to make the investigation asked for "in regard to the swampy

character of these lands, and if any of them are found, on examination, to be of the description of lands granted to the State as swamp and overflowed lands, it will be the duty of the Department to cause the same to be certified, and, on the request of the governor, patented to the State as such." An appeal was taken from this decision of the Commissioner to the Secretary of the Interior, on the ground that the subject-matter of the proceeding, so far as it related to lands already certified to the railroad companies, had passed from the jurisdiction of the Department. On August 24, 1676, the Acting Secretary of the Interior sustained the appeal and reversed the decision of the Commissioner, being of opinion that no examination or certification of the lands in question should be made.

Upon this recital of the proceeding in the General Land Office it is claimed for the plaintiff in error:

1. That by the terms of the act of March 5, 1872, the decision of the Commissioner was intended to be final, from which no appeal would lie to the Secretary.

But there is nothing in the act which alters the relation between the two officers as otherwise established, or puts the decisions of the Commissioner, under that act, upon a footing different from his other decisions. And if there were it would make no difference, for the only decision made was that the State of Iowa was entitled to the examination of the question as to the lands claimed for Buena Vista County, whether they were not swamp and overflowed lands. But he did not, in fact, enter upon the examination, and made no decision as to the character of the lands. The statement casually made in the letter of the Commissioner, that the State had long since claimed the lands as swamp lands, and furnished *prima facie* evidence that they were of that character, certainly has no value, either as evidence or adjudication, especially as he immediately adds, that "this claim has not yet been examined by this office, and until it is so examined and either rejected or approved, the duty of this Department is not performed."

2. It is further claimed by the plaintiff in error, that the defendant having notice of its application to the Land Department of its claim, based upon the list in question, and having

objected to its consideration solely on the ground that the Department had no jurisdiction to entertain it, which objection prevailed, is now estopped from making in any other form, any other objection to the list itself, or to the character of the lands described in it.

But this claim is equally without foundation. The defendant in error, if it could be considered as a party to the proceeding in the Land Office, contested its jurisdiction, as it had the right to do; and, having prevailed on that point, cannot be charged with waiving other objections it was not called on to make. If the Department had decided to entertain the claim, the inquiry would have been open, upon evidence from both parties, as to the actual character of the lands in question at the date of the swamp-land grant of September 28, 1850; and the Department would, in that event, have decided the question of fact according to the weight of the evidence adduced by both parties bearing upon it.

The very theory of the case of the plaintiff in error is, that, because the officers of the Land Department have neglected or refused to perform their duty in determining the question of fact on which the validity of its claim depends, it has an equity to require the investigation to be made in a court of justice, which ought to have been made by them, so that if, in point of fact, the lands claimed passed under the terms of the grant, the legal title wrongfully granted to the defendant may be decreed to it. According to the principle stated in the case of the *Railroad Co.* v. *Smith*, 9 Wall. 95, the same evidence which might have been required in the Land Office would be necessary to establish the plaintiff's claim in a court of equity, which would not decree the defendant to convey to the plaintiff the legal title, unless clearly satisfied, by full proof of the disputed fact, that the lands in controversy were swamp and overflowed lands at the date of the act of Congress of September 28, 1850.

The plaintiff in error did not choose to go into a trial of that issue, and rested its case simply upon the list purporting to be the selection on behalf of the county, of its swamp and overflowed lands. That instrument had no value as evidence, as to

the only matter in issue, for the reasons given by the Supreme Court of Iowa.

Other errors are assigned upon the record, relating, however, to matters of pleading and practice under the laws of the State, which, as they involve no federal question, are not. proper for our consideration.

The judgment of the Supreme Court of Iowa is accordingly

*Affirmed.*