WARREN v. CHAMBERS, ad.

Where the water of a river or lake, whether navigable or not, recedes slowly and imperceptibly, and the land before covered by water is left dry, such land belongs to the riparian owner from whose shore the water has so receded.

*Appeal from Jefferson Circuit Court in Chancery.*

Hon. WILLIAM M. HARRISON, Circuit Judge.

GALLAGHER & NEWTON, for appellant.

CLARK, WILLIAMS & MARTIN, for appellee.

COMPTON, J.

This was a bill in chancery, exhibited by Samuel H. Warren against William E. Chambers, as administrator of Stephen Bonnell, deceased, for an abatement in the price of certain lands which Bonnell sold to the complainant.

At the final hearing the bill was dismissed, and the complianant appealed.

The ground on which an abatement of the purchase money is sought, is, that Bonnell has no title to a portion of the land embraced in his deed to the appellant. The land sold was bounded on Tucker's lake, according to the original survey of the meanders of the lake, made by authority of the United States. Shortly before the sale to the appellant, the meanders of the lake were again surveyed, when it appeared that there was a strip of land lying between Bonnell's land, as originally run, and the lake, which had become dry by recession of the water. This strip was conveyed with the other land, and is described in Bonnell's deed as "the swamp land recently surveyed." The evidence showed that the water receded gradually—continuing to do so through a series of years.

Waiving other questions that have been discussed, we will proceed to determine whether Bonnell had title to the strip of land above indicated; for, if he had, then this controversy is ended, and the decree of the circuit court below must be affirmed. The question presented involves an examination, to some extent, of the doctrines of alluvion and dereliction. Alluvion, according to the English common law, is an addition made to land by the washing of the sea, a navigable river, or other stream, where the increase is so gradual in its progress that it can not be perceived how much is added in any moment of time. Land thus formed belongs to the proprietor of the adjacent land to which it is attached. Dereliction, according to the same authority, is a recession of the waters of the sea, a navigable river, or other stream, by which land that was before covered with water is left dry. In such case, if the alteration takes place suddenly and sensibly, the ownership remains according to former bounds; but if it is made gradually and imperceptibly, the derelict or dry land belongs to the riparian owner from whose shore or bank the water has so receded. *Woolrych on Water Courses, marg., pp. 29, 34, 35, 46, 47, and authorities there cited.* And the reason, as given by Blackstone, why alluvial and derelict land, gained by imperceptible degrees, belongs to the owner of the adjoining land, is that *de minimis non curat lex,* and because such owners, being often losers by the breaking in of the water, or at charges to keep it out, this possible gain is a reciprocal consideration for such possible charge or loss. *Bl. Com., vol. 2, 262.*

In this country, these rules of the common law have been applied to lake as well as other waters. Thus, in *Murry v. Sermon, 1 Hawks, 56,* decided by the Supreme Court of North Carolina, the defendant in ejectment claimed title to the land in dispute, which was bounded by Mattamuskeet lake, under a patent dated in 1761; and the plaintiff claimed under a grant of recent date, covering lands between the defendant's lines and the lake. Both parties introduced evidence as to what had been actually run for the lines of the defendant's land;

and the court below instructed the jury to find for the defendant, no matter whether the lake had receded or not; for, in either case, it remained his boundary. This was held to be erroneous, and a new trial was awarded, in order that the jury might find the fact whether the waters of the lake had receded gradually and imperceptibly, or suddenly and sensibly, from the land in controversy, because, on *that* question, the court said, the rights of the parties depended. So, in *Banks v. Ogden, 2 Wal., 57*, recently determined in the Supreme Court of the United States, it was held that accretion by alluvion from Lake Michigan belonged to the proprietor of the land bounded by the lake. It is true that, in both of these cases, lakes are navigable, and in the case before us, evidence was introduced in the court below to prove that Tucker's lake is navigable; but in such cases, it is immaterial whether the water is navigable or not. In England, from whence we derive the doctine of alluvion and dereliction, and where it is said to be applicable to streams generally, (*Woolrych on Waters, marg. p. 46,*) no river is navigable, in a common law sense, above the point where the tide ebbs and flows, though it may be so, in fact; and this rule has been adopted in most of the American States. *Angell on Water Courses, sec. 542, et seq., and cases there cited.* Whether a river is navigable, in a technical common law sense, or in the ordinary acceptation of the term, or whether it is navigable or not, may become an important inquiry in cases touching the right of the public to use it as a highway, and for commercial purposes. So, a like inquiry would be pertinent in cases involving the ownership of the bed of the stream, as between the government, or those claiming under it, and the riparian proprietors; because, at common law, the bed of a river belongs to the government so high up only as it is navigable in a technical sense, that is, as far as the tide ebbs and flows; and above that point it belongs to the riparian owners; each—where their lands lie on opposite sides of the river—owning to the middle or thread of the stream. But whether a river or other water is or is not navigable, can

in no way affect the right of the riparian proprietor to such additions as may be made by alluvion or dereliction. His right rests altogether on another and different foundation. The facts to be ascertained are the local situation of the land and the mode by which the increase has been added. If the land is contiguous to the water and the addition is made slowly and insensibly, his title to such addition is complete. In *Municipality No. 2 v. Orleans Cotton Press, 18 La. Rep., 122,* it was decided that the right to future alluvial formation was a vested right inherent in the property, and an essential attribute of it, resulting from natural law, in consequence of the local situation of the land to which it attaches ; and that it was an accessory to the principal estate or land, which cities as well as individuals might acquire, *jure alluvionis,* as owner of the front or riparian proprietor; and that the right was founded in justice, arising from the risks to which the land was exposed, and from the burden of keeping up levees or embankments in front of the river to protect the estate. And in *Banks v. Ogden, supra,* the Supreme Court of the United States said : " The rule governing additions made to land, bounded by a river, lake or sea, has been much discussed and variously settled, by usage and by positive law. Almost all jurists and legislatures, however, both ancient and modern, have agreed that the owner of the land, thus bounded, is entitled to these additions. By some, the rule has been vindicated on the principle of natural justice, that he who sustains the burden of losses and of repairs, imposed by the contiguity of waters, ought to receive whatever benefits they may bring by accretion; by others, it is derived from the principle of public policy, that it is the interest of the community that all land should have an owner, and most convenient that insensible additions to the shore should follow the title to the shore itself."

The testimony in the record brings the case before us clearly within the rules of law to which we have referred. The conclusion, therefore, is that the appellant acquire title to the derelict land, under the conveyance from Bonnell; and that, consequently, the decree must be affirmed.