ROBERT HAMMOND *et al.*

*v.*

MARTIN SHEPARD.

*Opinion filed June 21, 1900.*

1. WATERS—*shore owner on meandered lake takes only to water's edge.* Shore owners on meandered lakes, whether navigable or non-navigable, take title only to the water's edge, the title to the bed of the lake being in the State.

2. SAME—*right of shore owner to relictions and accretions.* In order that a shore owner on a meandered lake may take land by accretion or reliction it must appear that the addition was by slow and imperceptible processes, and if two or more persons own the shore the new land must be apportioned between them in proportion to the extent of their shore line.

3. SAME—*reliction must be shown to be from owner's shore line.* No shore owner on a meandered lake can take away from the State its title to the former bed of the lake, unless he can establish by proof that the dry land was formed by the receding of the water from his own shore line.

4. LIMITATIONS—*when a statute runs against a county.* A county which holds land which it may sell and convey without a breach of duty, holds the same as an individual, and its title may be defeated by possession and payment of taxes for the period required by the Statute of Limitations.

5. EJECTMENT—*plaintiff must recover on strength of his own title.* A plaintiff in ejectment can recover only on the strength of his own title, and not upon the mere weakness of the defendant's.

APPEAL from the Circuit Court of Carroll county; the Hon. JAMES S. BAUME, Judge, presiding.

J. M. HUNTER, and A. F. WINGERT, for appellants:

The question whether the land forming the beds of lakes belongs to the State or to the owners of riparian lands bordering thereon is to be decided by the laws of the State in which the land is located. *Hardin* v. *Jordan,* 140 U. S. 371; *Delaplaine* v. *Railway Co.* 42 Wis. 214; *Fuller* v. *Shedd,* 161 Ill. 462; *Railroad Co.* v. *Illinois,* 146 U. S. 387.

The title to and dominion over lands covered by tide waters within the boundaries of the several States be-

long to each State wherein they are located, and the State holds the fee of such lands in trust for the public. *Hardin* v. *Jordan*, 140 U. S. 371; *People* v. *Kirk*, 162 Ill. 138; *Revell* v. *People*, 177 id. 468; *Knight* v. *United Land Ass.* 142 U. S. 161; *Railroad Co.* v. *Illinois*, 146 id. 387.

The doctrine established in regard to lands covered by tide waters is applied in this country to lands bounded by fresh water in our large lakes. *People* v. *Kirk*, 162 Ill. 138; *Seaman* v. *Smith*, 24 id. 521; *Railroad Co.* v. *Illinois*, 146 U. S. 387; *Revell* v. *People*, 177 Ill. 468.

The same doctrine has in this country been extended to all lakes that are meandered, whether navigable or unnavigable, and without distinction as to size or depth of water. *Fuller* v. *Shedd*, 161 Ill. 462; *Trustees* v. *Schroll*, 120 id. 509; *Delaplaine* v. *Railway Co.* 42 Wis. 214; *Diedrich* v. *Railway Co.* id. 248; *Boorman* v. *Sunnuchs*, id. 233; *Noyes* v. *Collins*, 26 L. R. A. 609; *People* v. *Warner*, 74 N. W. Rep. 705; *Ne-Pe-Nauk Club* v. *Wilson*, 71 id. 661; *Mendota Club* v. *Anderson*, 78 id. 185; *Cooley* v. *Golden*, 117 Mo. 33.

In this State a grant of land bounded along or upon a meandered lake conveys only to the water's edge. *Seaman* v. *Smith*, 24 Ill. 521; *Trustees* v. *Schroll*, 120 id. 509; *Fuller* v. *Shedd*, 161 id. 462; *Hardin* v. *Shedd*, 177 id. 123.

It results from the foregoing cases that the title to such lake beds is and must be in the State, and that it has the right to dispose of the same, in the very nature of things, whenever they become dry by the sudden and sensible reliction of the waters.

The riparian rights of an owner of lands bounded on a meandered lake are limited to the right of access to the water within the width of his premises, and the increase to his land formed by slow, gradual and imperceptible accretion or reliction. *Revell* v. *People*, 177 Ill. 468; *Fuller* v. *Shedd*, 161 id. 462; *Boorman* v. *Sunnuchs*, 42 Wis. 233; *Lovingston* v. *St. Clair County*, 64 Ill. 56; 1 Am. & Eng. Ency. of Law, (2d ed.) 469; *Warren* v. *Chambers*, 25 Ark. 120.

When, however, the reliction takes place suddenly and sensibly, the riparian owner does not take the land so left dry, but the same goes to the State. *Noyes* v. *Collins*, 26 L. R. A. 609; *Fuller* v. *Shedd*, 161 Ill. 462; *Warren* v. *Chambers*, 25 Ark. 120; *Boorman* v. *Sunnuchs*, 42 Wis. 233; *Gill* v. *Lydick*, 59 N. W. Rep. 104.

If a lake suddenly dries up the bed will remain in the possession of the sovereign of the lake. Vattel on Law of Nations, sec. 274; *Martin* v. *Waddell*, 16 Pet. 367.

When an island appears in public waters the title thereto immediately vests in the State, and the State, as owner thereof, is entitled to all increase thereto by accretion or reliction. *People* v. *Warner*, 74 N. W. Rep. 705; *Cooley* v. *Golden*, 117 Mo. 33; *Jack* v. *Stover*, 60 Pa. St. 339; *St. Louis* v. *Rutz*, 138 U. S. 226; *Sherwood* v. *Commissioner*, 71 N. W. Rep. 532; *Victoria* v. *Schott*, 29 S. W. Rep. 681; *Bigelow* v. *Hoover*, 85 Iowa, 161; 1 Am. & Eng. Ency. of Law, (2d ed.) 475; *Crandall* v. *Smith*, 36 S. W. Rep. 612; *Railroad Co.* v. *Ramsey*, 8 L. R. A. 559.

When an island becomes joined to the mainland by the recession of the waters of a meandered lake, the owner of the mainland does not acquire title to the said island, but only to such accretions as form to his land. *Cooley* v..*Golden*, 117 Mo. 33; *Bigelow* v. *Hoover*, 82 Iowa, 161; *Victoria* v. *Schott*, 29 S. W. Rep. 681; *Railroad Co.* v. *Ramsey*, 8 L. R. A. 559.

Before title can be acquired by accretion or reliction the claimant must show title in himself to the shore. The right depends upon contiguity. *Hardin* v. *Shedd*, 177 Ill. 123; *Lovingston* v. *St. Clair County*, 64 id. 56; *Boorman* v. *Sunnuchs*, 42 Wis. 233; *Bristol* v. *Carroll County*, 95 Ill. 84; 1 Am. & Eng. Ency. of Law, (2d ed.) 473.

The Statute of Limitations in this State does not run against the State in any capacity, hence title to land owned by the State cannot be acquired by adverse possession. *Trustees* v. *McClure*, 167 Ill. 23; *County of Piatt* v. *Goodell*, 97 id. 84; 1 Am. & Eng. Ency. of Law, (2d ed.) 876.

A plaintiff in ejectment must recover on the strength of his own title, and not upon the weakness of that of his adversary.   A title in any other than the plaintiff will defeat a recovery.   *McCauley* v. *Mahon*, 174 Ill. 384; *South Park Comrs.* v. *Gavin*, 139 id. 280.

D. S. BERRY, for appellee:

Where land is conveyed bounded on one side by a meandered lake, the line between the land and the water will form a boundary, and such line will follow the receding water, and the accretion thus formed will belong to the riparian owner and pass to the grantee as a part of the land.   *Chicago Dock Co.* v. *Kinzie*, 93 Ill. 415; *Fuller* v. *Shedd*, 161 id. 462.

Even where such accretions are made more quickly as a result of artificial means, or partly by natural causes and partly by artificial means, yet they accrue to and belong to the riparian proprietor.   *Lovingston* v. *St. Clair County*, 64 Ill. 56; Angell on Water-courses, (16th ed.) sec. 54, p. 58; *Chicago Dock Co.* v. *Kinzie*, 93 Ill. 415.

Whether the term "accretion" be applied to the slow and imperceptible formation of land on streams or lakes by the action of the currents of the one or the recession of the waters of the other, it is pertinent to the land alike and an accretion thereto.   *Fuller* v. *Shedd*, 161 Ill. 462.

If a meander line and the actual water line differ, the latter is the true line of a lot bounded by a meandered line, unless fraud is shown.   *Boorman* v. *Sunnuchs*, 42 Wis. 233; *Wright* v. *Day*, 33 id. 260; *Fuller* v. *Shedd*, 161 Ill. 462.

A mere trespasser who takes forcible possession of land without title cannot set up outstanding title in another to defeat an action of ejectment.   *Anderson* v. *Gray*, 134 Ill. 550; *Hardin* v. *Forsythe*, 99 id. 312.

Any deed purporting on its face to convey title, no matter on what it is founded, is color of title.   *Dickinson* v. *Breeden*, 30 Ill. 279; *Hinckley* v. *Green*, 52 id. 223; *Fagan* v. *Rosier*, 68 id. 84.

The Statute of Limitations runs against a county the same as against an individual, in all matters concerning land which the county has the right to sell. *County of Piatt* v. *Goodell*, 97 Ill. 84.

Prior possession under claim of ownership will maintain ejectment, unless defendant shows a better title. *Benefield* v. *Albert*, 132 Ill. 665; *Barger* v. *Hobbs*, 67 id. 592.

A riparian proprietor has possession of all lands made by accretion and reliction, by virtue of his possession of the adjoining land, to as full an extent as if the same was expressly included in the terms of description. *Griffin* v. *Kirk*, 47 Ill. App. 258.

Mr. JUSTICE WILKIN delivered the opinion of the court:

In an action of ejectment in the circuit court of Carroll county Martin Shepard, appellee, recovered a judgment against appellants for the east half of the north-west quarter of section 21, township 24, north, range 4, east of the fourth principal meridian, Carroll county, in fee. To reverse that judgment this appeal is prosecuted.

The declaration is of three counts, the first describing and claiming the whole of the east half, etc., and each of the others describing and claiming one of the 40-acre tracts of the 80. The plea was not guilty, and a trial was had before the court without a jury.

Plaintiff sought to establish his title to the premises as a whole by color of title, possession and payment of taxes for seven years, and also by twenty years' adverse possession to a fraction of 3.39 acres in the south-east corner of the tract, claiming that he became the owner in fee of the remaining 76.61 acres as accretions to or relictions from said fraction; also, that at the time his grantor obtained a patent from the government to the fraction, all the remainder of the 80-acre tract was between the meandered line of the fraction and the true water line of the lake on which it bounded, and therefore the whole tract passed by such patent; and further, that

he had been in the open, exclusive possession of all of the 80-acre tract for more than twenty years prior to the entry upon the same by the defendants. He also set up title to a small part of the north 40 of the tract by deed from one Edwin Doty. The defendants introduced in evidence a patent from the United States to Elhanan Fisher, dated July 10, 1873, to the west fractional half of the north-west quarter of this section, containing 44 acres, and deraigning title to that fraction from said Fisher. The only theory upon which they could claim title to the land in controversy in this suit would be, that by accretion or reliction it had become added to the fractional 44 acres. It is clear such a claim could not be maintained upon the proofs in this record, and it is not insisted upon by appellants. Their contention is, that the plaintiff failed to establish title in himself to any part of the land described in his declaration, much less to the whole of it, and therefore the judgment of the trial court is erroneous.

The 3.39 acres is a part of an island in Sunfish lake, the lake extending over portions of Mt. Carroll and York townships, in Carroll county. This lake at one time covered 738.70 acres in sections 30, 31 and 32, township 24, etc., in Mt. Carroll township, extending about one and a half miles north and south and one mile east and west, most of it being in section 31. In the year 1839 the island of which the 3.39 acres is a part, (known as Shepard's island,) and the lake, were meandered by government surveyors and duly platted. The evidence all shows that prior to 1871 the bed of the lake, to substantially the meandered line, was covered with water to a depth of several feet. North of the head of the lake is Plum river, and in the fall of 1871, for some reason not appearing from the evidence, the county caused a ditch to be dug from the lake to this river. This drained most, if not all, of the water of the lake from the lands in controversy, in which condition they remained for several years. The

ditch became filled up, and in 1880 or 1881 the lake had again become filled with water to substantially its former depth. No material change took place until the spring of 1890, when the water began to again disappear, which the plaintiff contends continued until the land in suit became dry.

The law of this State, as repeatedly announced, is, that shore owners on meandered lakes, whether navigable or non-navigable, take title only to the water's edge, the bed of the lake being in the State. It is not claimed that the 76.61 acres became dry land after the lake filled in 1880 or 1881, until after the year 1890, and as no statute of limitations could run against the State, plaintiff wholly failed to prove a prescriptive title to that part of the tract.

The title to the 3.39 acres remained in the government of the United States until July 10, 1873, when a patent was issued by it to one Elijah Funk, for the use of Carroll county. Afterwards, April 20, 1875, Funk and wife deeded the same to plaintiff, the deed reciting: "It being the same land that I, as drainage commissioner, located for the use of Carroll county." Under this deed plaintiff claims title to the 3.39 acres by color of title, possession and payment of taxes for the statutory period of seven years. The payment of taxes is not denied, but the defendants insist that the requisite proof of possession is wanting, and especially that the land was held by the county of Carroll as a public trust, and that no limitation could run against it under sections 6 and 7 of the Statute of Limitations. (Starr & Cur. Stat. chap. 83, sec. 8.) While the proof of plaintiff's possession under the Funk deed is not entirely satisfactory, we are inclined to think it sufficient to justify the court below in finding that fact in his favor. In *County of Piatt* v. *Goodell*, 97 Ill. 84, one of the questions being, "Does the Statute of Limitations run against a county in favor of a party holding color of title for swamp lands acquired in good faith and

showing payment of taxes and possession for eight years,"
we said "the tax deed was color of title under the Limi-
tation act of 1839," holding that such land was not held
by the county for any public purpose, and the exception
in section 8, *supra,* did not apply; that a county, being
the owner of land which it may sell and convey without
a breach of duty, holds the same as an individual, and
its title "may be defeated by possession and payment of
taxes under color of title made in good faith, for a period
of seven years, in the same manner as if the land be-
longed to an individual." The land in question was not
held by the county for a public use. It could unquestion-
ably sell it and use the proceeds for any lawful purpose.
Whether the sale and conveyance were regularly made
or not, the deed from Funk was color of title. (*Dickenson*
v. *Breeden,* 30 Ill. 279; *Coleman* v. *Billings,* 89 id. 183; *Hink-
ley* v. *Greene,* 52 id. 223; *Fagan* v. *Rosier,* 68 id. 84.) We
think the plaintiff established in himself title to the 3.39
acres, and to that extent he became a shore owner upon
the lake.

Just how this fraction fronted on the lake does not
fully appear, but under the foregoing rule of law plain-
tiff's deed conveyed the land no further than the water
line, giving him certain riparian rights. One of these
rights as a shore owner was the right to take title to any
land which might be added to his shore by accretion or
reliction, and the principal question in this case is, as we
view it, did the plaintiff establish, by evidence upon the
trial, that the remainder of the 80-acre tract (that is, the
76.61 acres,) became added to the 3.39 acres by reliction
or accretion. "Reliction" is the term applied to land made
by the recession of the water by which it was previously
covered. (*Warren* v. *Chambers,* 25 Ark. 120; 4 Am. Rep. 23;
*Banks* v. *Ogden,* 2 Wall. 57.) "If the addition takes place
suddenly and sensibly the ownership remains according
to former boundaries; but if it is made gradually and im-
perceptibly the derelict or dry land *belongs to the riparian*

*owner from whose shore or bank the water has receded.*" (Wool-rich on Law of Waters, 29; *Warren* v. *Chambers, supra.*)
All the authorities agree that in order that a shore owner take land by way of accretion or reliction it must appear that the addition was to his shore either by the deposit of earth or by the receding of the water from his land, and that such addition must be by slow and imperceptible processes. If two or more own the shore from which the water recedes, the new land must be apportioned between them according to the extent of their shore line.

It is difficult, if not impossible, from the evidence in this case and the very imperfect plats of the lake and the surrounding land, to correctly understand just what caused the waters to disappear or how the surrounding lands were affected by the drying up of the lake. We are unable, however, in view of the facts presented, to reach the conclusion that the plaintiff established his ownership to the 76.61 acres as an addition to the 3.39 acres by reliction. It appears that upon the draining of the lake, in 1871, as the water receded there appeared dry land to the north-west of plaintiff's fraction, which is known in the evidence as Grass island. This island contained some 15 acres, about one-half of which is situated on the north part of the 80 acres in controversy; also, that some distance north of the 3.39 acres, and east of Grass island, there appeared a third island. The clear preponderance of testimony is that immediately north of this 3.39-acre fraction, and between it and the third island, there is a depression, and also that on the east side of Grass island, between it on the one side and the third island and the 3.39-acre fraction on the other, there is a swale, in which there is more or less water. The general tendency of the evidence is to the effect that the water of the lake on this north-west quarter is deeper on the west side of Grass island than on the east, but there is no satisfactory proof as to the direction in which the water receded from the shore as the lake dried up. Certainly it fails to show

that the whole of the 76.61 acres became dry land by the water receding from the 3.39 acres. The existence of the islands mentioned, and the intervening swales and depressions, tend to show that the reliction, at least as to a part of said 76.61 acres, was not from plaintiff's shore. As before stated, one of his claims of title is that a portion of the north 40 became dry land by reliction from the shore of Doty, who had conveyed the same to plaintiff. Manifestly, if that claim of title can be maintained, plaintiff must fail in his contention that he became the owner of the 76.61 acres by reliction from his shore, as owner of the 3.39 acres. Nor is there any proof upon which to base the conclusion that relictions formed upon plaintiff's shore became so connected with the Doty land as to cover the entire 80-acre tract. We think the plaintiff utterly failed to establish his title to the whole of the land in question by reliction, for the reason already stated that he makes no proof whatever that the reliction was from his shore. Upon the contrary, the clear preponderance of the evidence is that at least a part of the dry land became such by the water receding either from the islands in question or from the east shore.

A considerable portion of the argument is devoted to the question whether or not the drying up of the lake was by such slow and imperceptible processes as to entitle shore owners to the dry land by way of accretion or reliction; but we do not regard that question as of controlling importance in the present state of the record, because, whether the recession of the water was sudden, within the meaning of the law, or gradual, no shore owner can take away from the State its title to the former bed of the lake unless he can establish by proof that the dry land was formed by the water receding from his shore line.

Appellee having wholly failed to show a *prima facie* title in himself to the 76.61 acres, he is in no position to urge that appellants were mere trespassers and insist

that they cannot set up an outstanding title to defeat his action of ejectment. There is nothing in the facts of the case to take it out of the general rule that a plaintiff in the action of ejectment can recover only upon the strength of his own title and never upon the mere weakness of his adversary's.

The judgment of the circuit court will be reversed and the cause remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*