George M. DeLand

*v.*

The Dixon Power and Lighting Company *et al.*

*Opinion filed December 22, 1906—Rehearing denied Feb. 6, 1907.*

1. Ejectment—*what essential to title by virtue of ad quod damnum proceeding.* A formal order of the court in an *ad quod damnum* proceeding under chapter 71 of the Revised Statutes of 1845, granting "leave" to build a dam, is essential to a complete record transferring title to the land on which the dam is located, notwithstanding the record contains an order showing the verdict of the jury and proof is made that the damages awarded by the verdict were paid.

2. Same—*when act of city council in vacating a street does not aid title.* Action of a city council in vacating a platted street in order to aid defects in the title of private persons to the land embraced within the street, so as to enable such parties to appropriate and use such street for their private purposes, is *ultra vires* and void, and does not aid the title of one who claims as a grantee of the original proprietor of the land, to whom the title is claimed to have reverted by virtue of the vacation of the platted street.

3. Same—*plaintiff who fails to prove prima facie title cannot recover against trespasser.* A plaintiff in ejectment who fails to show a *prima facie* legal title in himself to the premises, which are a part of a public street, cannot recover even though the defendant is a trespasser, and the plaintiff, as against the city, might have been entitled to withhold possession from it upon the ground of equitable estoppel.

Cartwright and Hand, JJ., dissenting.

Appeal from the Circuit Court of Lee county; the Hon. R. S. Farrand, Judge, presiding.

William Barge, for appellant.

A. C. Bardwell, E. E. Wingert, and E. H. Brewster, for appellees.

Mr. Justice Farmer delivered the opinion of the court:

This was ejectment brought by appellant, claiming to be the owner in fee of a strip of ground extending from the center of Rock river to Water street, in the city of Dixon,

being the site of a dam on the north shore, and to the center of Rock river. A jury was waived and the cause submitted to the court for trial. The finding and judgment was for the defendants, and the plaintiff has prosecuted this appeal.

Appellant sought to deraign title from four different sources. Two of them rested on title asserted to have been acquired by the Rock River Hydraulic Company by virtue of a writ of *ad quod damnum* issued out of the commissioners' court of Lee county August 18, 1849, and legal proceedings and orders had thereunder.. Appellant produced in evidence a transcript of the record and proceedings in the county commissioners' court, but the court held the same insufficient to transfer the title to the premises. The statute then in force authorizing this writ *ad quod damnum* was enacted February 9, 1827, and constituted chapter 71 of the Revised Statutes of 1845. Sections 1, 2 and 3 of the act provided for the issuance of the writ *ad quod damnum,* the mode and time of giving notice to the land owner, the empaneling of a jury thereunder and inquisition or verdict of the jury. Section 3 required certain findings as to the effect of the building of the dam on the health of the neighborhood, the injury that will result to others, etc. Section 4 is as follows: "When the inquest aforesaid shall be taken, the party obtaining the same, shall notify the owner or owners of lands mentioned in such inquisition, whose lands are to be affected by the same, to appear at the next county commissioners' court and show cause why leave should not be granted to build such mill and dam; which notice shall be served as before directed." Sections 5 and 6 relate to proceedings when a party who owns the land on both sides of a river wishes to erect a dam, and calls on the court to ascertain whether the health of the neighborhood will be affected, the lands of others overflowed, and what regulations and restrictions as to the navigation of the stream are necessary. Section 7 relates to the proceedings to be had when it is desired to acquire land on which to build the dam

and the inquisition of the jury has been returned and the proceedings had which under section 4 are necessary to obtain action by the court on the question whether "leave ought to be given to build the dam." Section 7 is as follows, so far as necessary to be considered: "If the party applying, obtain leave to build the said dam, he shall, on paying to the proprietor or proprietors of the lands located the damages assessed by the jury as aforesaid, become seized in fee of the land so located, to him, his heirs and assigns."

Under said sections 4 and 7 the granting by the court of "leave" to build the dam is an essential step in the proceedings to obtain the title to the land on which to build the dam. Without action on the part of the court granting "leave," title could not be acquired by the proceedings *ad quod damnum* under this statute. The transcript of the proceedings offered in evidence does not show such leave was given. The inquisition or verdict of the jury is the last order entered in the case. The record is, therefore, in this respect insufficient to legally establish the title to the premises, but there are other defects also in said proceedings.

Appellant contends proof was produced showing that the damages assessed by the jury were paid to the land owner. But if this contention were conceded it would be insufficient to complete the record of the proceedings *ad quod damnum.* The final order of "leave" to acquire the land involved consideration by the court of matters affecting the general interest, such as the health of the neighborhood, the overflowing of the lands of others, etc., and the entry of such order we deem indispensable to a complete record transferring title, such as is required in actions of ejectment by one who asserts such transfer by legal proceedings.

The third claim of title in appellant is based on the assertion that title at one time rested in one John Dixon; that said Dixon platted the same, in compliance with the statute, as the town of North Dixon; that the *locus in quo* became and was a part of Water street, in the said town of North

Dixon; that the board of trustees of the town of North Dixon vacated that portion of Water street here involved; that thereupon the title thereto reverted to John Dixon, and that the appellant traced title from said John Dixon. The records pertaining to the vacation of that portion of Water street were produced in evidence. It thus appeared that John Dement and W. W. Heaton presented a petition to the city council of North Dixon in which they represented that they were the owners of the capital stock and franchises and the real estate of the Rock River Hydraulic Company; that they held a chain of paper title to the premises here involved, "which said tract of land was originally set off and assigned to said hydraulic company by a jury empaneled under the writ of *ad quod damnum,* and among other duties set off to the said company lands necessary for the erection of dams, buildings, feeders and mill-races for the creation and use of hydraulic purposes; that your petitioners have lately been advised that their title to said property was deficient and unsafe in consequence of the same being included within the boundaries of Water street above referred to. Your petitioners further represent that said property ever has been, and is now, not only desirable but highly necessary for the use of your petitioners or others, the owners of said hydraulic power and franchises, to enable them to carry out their plans and intentions in relation to the improvements and use of the same, and which said use and improvements your petitioners respectfully suggest would and will be of much more public value and use than the use of said premises as a public highway would or will be, and that such portion of said street as is not included in the boundaries of said tract does and will always furnish sufficient accommodation to the public, the inhabitants of the town or owners of the lots north of and on said street, and that no injury can or will result to any person whatsoever from the vacating so much of said Water street as may be or is included within the boundaries of the above described tract. Your petition-

ers therefore pray your honorable body to pass an order vacating so much of said Water street, in said North Dixon, as is included within the before mentioned boundaries, subject to the exception therein mentioned, and granting to your petitioners the right and privilege, in perpetuity, of using the said premises for the purpose of making or building mill-dams, mill-races, canals, feeders, and mills or other buildings or improvements in and thereon and for the creation and use of hydraulic power, as in duty bound your petitioners will ever pray." The city council caused a jury to be empaneled to consider whether any one would be damaged by the vacation of the street,—a proceeding without legal warrant; and on return of a verdict by the jury that no one would be damaged, the city council caused the following order to be entered: "Ordered that the prayer of said petitioners be granted, and that so much of Water street, in the town of North Dixon, as lies within the following boundaries be vacated, and that said John Dement and William W. Heaton, their heirs or assigns, and the stockholders and corporation of Rock River Hydraulic Company at Dixon, or either of them, be authorized to use and occupy the said premises for the erection of mills, mill-dams, mill-races, feeders, or other purposes in aid thereof, to-wit:" (Here follows a lengthy description which need not be shown,) "which said tract of land was originally set off and assigned to said hydraulic company by a jury empaneled under a writ of *ad quod damnum.*"

The petition, and record of the action of the city council thereon, demonstrate that the purpose of the petitioners and the object of the action taken by the city council were the correcting of defects in the title of the petitioners, Dement and Heaton, to the premises, and the confirming in these parties a legal right to appropriate, own and possess a portion of one of the streets of the city. The city council held title to the street in trust for the local and general public. The powers possessed by the council to vacate the street,

or a portion of it, existed only when, in the judgment and discretion of the council, the public good would be subserved by the vacation of the street. The city council possessed no power to vacate the street in order to correct deficiencies or errors in the claim of Dement and Heaton or the hydraulic company thereto. The action of the city council was merely an attempt to pervert the power of vacation to the sole purpose of enabling private parties to appropriate and enjoy a portion of a public street. This affirmatively appears on the face of the petition for the vacation and in the order of vacation. The action of the city council was therefore *ultra vires* and void *in toto*, and had no legal effect to aid the title of appellant. *Smith* v. *McDowell,* 148 Ill. 51; *Corcoran* v. *Chicago, Madison and Northern Railroad Co.* 149 id. 291; *Cicero Lumber Co.* v. *Town of Cicero,* 176 id. 9.

The fourth claim of title is adverse possession for more than twenty years. The premises were a part of a public street in North Dixon. No title to them, therefore, could be acquired by mere lapse of time, and even though appellant had been deprived of possession by appellee wrongfully entering thereon without his knowledge or consent, he is in no condition to complain that the appellee is a mere trespasser and therefore cannot set up an outstanding title to defeat his action of ejectment, for the reason that he wholly failed to show a *prima facie* title in himself. (*Hammond* v. *Shepard,* 186 Ill. 235.) And this is true even if the city had permitted such use of its streets as to become estopped, on equitable grounds, from asserting its title. *Thomas* v. *Bowman,* 30 Ill. 84; *Mills* v. *Graves,* 38 id. 455; *Linnertz* v. *Dorway,* 175 id. 508.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

Cartwright and Hand, JJ., dissenting:

We do not agree with the conclusion that it was necessary for appellant to prove that an order was made by the county commissioners' court, granting leave to build the

dam in question. The proceeding to obtain leave and assess damages was in 1849, the court acquired jurisdiction to hear and determine the questions involved, the cause was heard, there was a verdict of a jury, and there was no motion for a new trial or in arrest of judgment. So far as land owners were concerned, at least, the granting of leave was a matter of course. The dam was built and mills were erected in connection with it and were operated by the power created. The dam has had a continued existence of more than half a century with the acquiescence of every one concerned in the question whether leave was granted to build it. If it was necessary that a formal order granting leave to build the dam and do what was in fact done should be made, it appears to us that justice requires that the law should raise a presumption that the order was made although it does not now appear of record. We understand that under such circumstances the law raises a presumption of that kind. *Jefferson County* v. *Ferguson,* 13 Ill. 33; *Chicago, Burlington and Quincy Railroad Co.* v. *Chamberlain,* 84 id. 333; *Cassell* v. *Joseph,* 184 id. 378.