(No. 12417.—Judgment reversed.)

P. C. HALEY *et al.* Appellees, *vs.* FRED JOHNSON, Appellant.

*Opinion filed April 21, 1920.*

1. LIMITATIONS—*what adverse possession is sufficient to bar assertion of legal title.* The adverse possession required to constitute a bar to the assertion of the legal title must be hostile, actual, notorious, exclusive and continuous under a claim or color of title for twenty years.

2. SAME—*presumptions are in favor of the true owner.* The presumptions are all in favor of the true owner, and the proof to establish adverse possession must be strict, clear and unequivocal.

3. SAME—*when possession by wife is not adverse to her husband.* Where husband and wife live together on property owned by the wife adjoining property owned by the husband, and the husband builds a fence entirely on his own land but intends it to be substantially on the line between the properties, the grantees of one who inherited all the property and who conveyed them the wife's land cannot claim title to the fence on the ground that the wife's possession was adverse to her husband, as her possession was not adverse while living with her husband.

4. TRESPASS—*when location of line between properties is in issue.* In an action of trespass *quare clausum fregit,* where the parties own adjoining properties by virtue of deeds from the same grantor and both claim title to a fence built before their grantor inherited the properties but which was destroyed by the defendant, a plea of *liberum tenementum,* replication thereto and issue joined present the question whether the fence was on the defendant's lot, and this requires determination of the location of the line between the two properties.

APPEAL from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding.

GARNSEY, WOOD & LENNON, for appellant.

ROBERT E. HALEY, and J. W. DOWNEY, (P. C. HALEY, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellees sued appellant in an action of trespass *quare clausum fregit.* The declaration alleged appellant forcibly broke and entered the close of appellees (three city lots

described) and broke down and destroyed fifteen rods of fence of the appellees belonging to said close. Appellant pleaded the general issue and a special plea of *liberum tenementum*. Replication was filed to and issue joined on the special plea. A jury was waived by agreement and the cause tried by the court, resulting in a judgment for appellees against appellant for $84 and costs.

Appellees acquired by purchase from Lydia Talbot, a widow, in April, 1917, lots 13, 14 and 15 in Blanchard's subdivision of block 32, School Section addition to Joliet, Illinois. In May, 1915, the appellant acquired by purchase from the same grantor lot 6 in Commissioner's subdivision of block 33, School Section addition. Lots 13, 14 and 15 faced east on Illinois street and extended back west to the line between blocks 32 and 33. Marion street ran east and west along the north side of lot 13, and the other two lots, 14 and 15, lay south of lot 13. Lot 6 in block 33 faced north on Marion street and extended back south almost to the south line of lot 15 in block 32. Its east line was the west line of appellees' lots. There was an old picket fence separating appellant's and appellees' property. Appellant claimed the fence was wholly on his lot, and, over appellees' protest and order forbidding him to do so, he tore down and appropriated the fence, whereupon this suit was brought, and from the judgment in favor of appellees appellant has prosecuted this appeal.

Many years ago the appellees' lots were owned by Ann Smith, who with her husband, Andrew Smith, lived upon and occupied them as a homestead. Andrew Smith, the husband, owned the property adjoining his wife's on the west, although as we understand it his property was not during his lifetime subdivided into blocks and lots. When it was subdivided, lot 6 of the subdivision adjoined appellees' lots on the west. Smith died in 1886, and his widow, Ann Smith, died in 1905. Lydia Talbot is their daughter, and through her father and mother acquired title to the

property now owned by both appellant and appellees. As we have said, in May, 1915, she conveyed lot 6 to appellant, and in April, 1917, she conveyed lots 13, 14 and 15 to appellees. The fence was built by Smith more than thirty years ago, while he and his wife were living on the property now owned by appellees. Both parties to this suit insist the fence was not a partition fence. Appellees say that when Smith built the fence he did it to enclose the west end of lots 13, 14 and 15 and not as a partition fence between those lots and his property, which is now lot 6, and that the owners of the lots have had adverse possession of the fence, and all the land east of it, more than thirty years, whereby their title has become absolute by limitation even if the fence was on lot 6.

Accepting the contention of the parties themselves that the fence never was a partition fence, two questions are left for determination: (1) Was the fence built on lot 6? And (2) did appellees acquire title to it by the twenty years Statute of Limitations?

As to the first question, we have carefully read the entire evidence, and while it is conflicting we cannot escape the conclusion that the decided weight of it is that the fence at the north end was from a foot to a foot and a half west of the line between appellees' lots and appellant's, and that at the south end it was two or more feet west of the line. The evidence shows, therefore, that the entire fence was on lot 6. It was placed there more than thirty years ago, and appellees contend they and their predecessors in title have had adverse possession of it all that time and that their title is good by limitation. We do not think this position tenable, for we do not see how it can be said Ann Smith's possession was hostile to her husband. Andrew Smith built the fence while he and his wife were living together, and, whether it is considered a partition fence or not, it was built to separate the property of the wife, which they lived on, from the property owned by the husband.

Smith selected the location on which he built the fence and continued to live with his wife on her lots until his death.

The adverse possession required to constitute a bar to the assertion of the legal title by the owner "must be (1) hostile or adverse; (2) actual; (3) visible, notorious and exclusive; (4) continuous; and (5) under a claim or color of title," (*Zirngibl* v. *Calumet Dock and Canal Co.* 157 Ill. 430,) and must so continue for twenty years. "The doctrine of adverse possession is to be taken strictly. It can not be made out by inference or implication. The presumptions are all in favor of the true owner, and the proof to establish adverse possession must be strict, clear, positive and unequivocal." *Horn* v. *Metzger,* 234 Ill. 240.

There is nothing in the record from which it appears that Ann Smith's possession of the fence was in any sense hostile or adverse to her husband. It evidently answered the purpose for which her husband built it, and while it is very probable they both thought it was substantially on the line, yet, living together as they did, as husband and wife, something more than mere possession by the wife would be necessary to establish that it was adverse and hostile to her husband. (*Sanford* v. *Finkle,* 112 Ill. 146.) After Smith's death the daughter, Lydia Talbot, became the owner of lot 6, and she also became the owner of lots 13, 14 and 15. There was then unity of both title and possession in her, and we think the claim of title by adverse possession can not be sustained.

Appellees say this is not a proceeding in which a disputed line can properly be established. Appellant acquired title to the whole of lot 6 by his deed from Mrs. Talbot. Appellees acquired title only to lots 13, 14 and 15 by their deed. The plea of *liberum tenementum,* replication thereto and issue joined thereby, presented for determination the question whether the fence was on appellant's lot. Both parties claimed the stone and stake at the south line of Marion street were on the line. The weight of the proof

showed the fence was west of that line and wholly on lot 6. It was therefore on appellant's close and in removing it he did not enter the close of appellees.

For the reasons stated the judgment cannot be sustained, and it is accordingly reversed.     *Judgment reversed.*

---

(No. 12606.—Appellate Court reversed; municipal court affirmed.)
M. A. SCHOLBE, Appellee, *vs.* MAX SCHUCHARDT *et al.* Appellants.

*Opinion filed April 21, 1920.*