(No. 15148.—Decree affirmed.)
ARTHUR W. WILKINSON, Appellee, *vs.* BENJAMIN H. WATTS *et al.* Appellants.

*Opinion filed October 20, 1923—Rehearing denied Dec. 5, 1923.*

1. WATERS—*conveyance of land bordering lake extends only to water's edge.* Where land is conveyed on a natural navigable lake the land conveyed extends only to the water's edge and not to the middle thereof, although the lake is formed by the widening of the stream of which it is a part.

2. DEEDS—*when a party claiming under State title must prove conveyance included swamp land.* A party who claims title from the State by virtue of the United States Swamp Land act of 1850 and by subsequent adverse possession against the county must prove that the tract claimed is of the character described in the act, where there is no proof that the Secretary of the Interior designated the land as swamp land.

3. LIMITATIONS—*adverse possession will not run against Federal government.* The English doctrine that there can be no adverse possession against the crown is applicable in the United States and precludes the running of the Statute of Limitations against the Federal government.

4. SAME—*what is necessary to constitute title by adverse possession.* Possession which is required to constitute a bar to the assertion of title by the legal owner must be hostile or adverse, actual, visible and exclusive, and continuous under claim of ownership or color of title for a period of twenty years, and the proof to overcome the presumption in favor of the true owner and to establish adverse possession must be clear, strict, positive and unequivocal.

APPEAL from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

D. T. SMILEY, for appellants.

HOMER COOKE, and GOOD, CHILDS, BOBB & WESCOTT, (DWIGHT S. BOBB, and ESTHER A. DUNSHEE, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

The question arising in this case is as to the ownership of a certain tract of land in the northeast quarter of the southwest quarter of section 4, township 45, north, range 9, east of the third principal meridian, in Lake county, known as Watts' island. This island is in what is known as Pistakee lake. The appellee filed his bill in partition, making John Wilkinson, John Wilkinson, Jr., Frank Wilkinson and Hilda Wilkinson, (now Bartlett,) children of John Wilkinson, and William Watts, defendants, claiming by his bill that Watts' island, with other land described in the bill, was owned by appellee and the other Wilkinsons named and that Watts had no title therein. Watts answered the bill and filed a cross-bill, alleging title in himself. During the pendency of the cause Watts died, and appellants, as his heirs-at-law, were substituted. The bill alleges that in 1838

a survey was made of a portion of fractional section 4 in said township; that the land known as Watts' island is located in the northeast quarter of the southwest quarter of section 4, and that the survey of 1838 did not include Watts' island; that in February, 1890, Watts made application to the government for the survey of Watts' island in order that it might be offered for sale; that on February 24, 1891, pursuant to such application by Watts, the government, having advertised the matter, offered the island for sale, and it was purchased by Edwin M. Hale and a patent issued to him by the government; that Hale and his wife conveyed their title to John Wilkinson, appellee's grantor, by deed dated June 26, 1892, and on August 9, 1901, Wilkinson and his wife conveyed a one-fifth interest in the premises to appellee and the other three children of Wilkinson named as defendants in the bill. Watts by his cross-bill claimed by adverse possession and by *mesne* conveyances from Abiel Walker, to whom a patent had been issued purporting to cover the southwest fractional quarter of section 4, which patent was for 26.43 acres of land, according to the plat and survey of the lands attached thereto. Upon reference of the cause to the master a hearing was had, and his report sustained the contentions of the original bill of appellee and recommended that the cross-bill of Watts be dismissed for want of equity, finding that he had no title in Watts' island. The chancellor entered a decree finding that the title to the property was in the Wilkinsons; that Watts and his heirs had no title therein; that by reason of the application of Watts to the government to have Watts' island surveyed and sold, he could not support his contention of title by adverse possession.

The patent to Walker was dated June 1, 1845. The survey referred to shows an irregularly-shaped body of land lying along the west boundary line of the northwest quarter of the southwest quarter of section 4, extending a short distance into the southwest quarter of the southwest quar-

ter of section 4. The main portion of the land, however, is in the northwest quarter of the southwest quarter of section 4, none of it being in the northeast quarter of the southwest quarter of section 4, where Watts' island is located. A meander line is shown on the plat along the easterly side of this fractional quarter section, designated thereon as containing 26.43 acres, so that it may be said that the patent under which it was claimed that Walker, as predecessor in title of Watts, took title, did not by its terms or by designation on the plat extend beyond the 26.43 acres therein referred to.

The appellants contend that their patentee, Abiel Walker, took title to Watts' island by his patent to the fractional quarter section because by that patent the title extended to the middle thread of the stream of which Pistakee lake formed a part. It appears from the record that Pistakee lake is navigable, and the general rule is, that where land is conveyed on a natural navigable lake the land conveyed extends only to the water's edge and not to the middle thereof. As was said in *Fuller* v. *Shedd,* 161 Ill. 462: "The determination of boundary lines to the center of the river is not attendant with any serious difficulty, but the irregular borders of a lake would render the determination of lines in the bed of the lake between riparian proprietors of almost impossible solution. This, as well as the injustice of holding that the purchaser of a small rim of the lake, consisting of but a few acres, would at once become the owner of thousands of acres of a non-navigable lake, has caused many courts to hold the riparian proprietor takes only to the water's edge." This rule has also been approved in *Hardin* v. *Shedd,* 190 U. S. 508, and *Hammond* v. *Shepard,* 186 Ill. 235. It therefore cannot be successfully contended that Walker was in any way connected with the record title to this land.

The second contention is, that the land in question was swamp land, and that by the United States Swamp Land

act of 1850 the same became vested in the State of Illinois, and in turn by an act of the legislature passed to Lake county, and that William Watts having been in possession of the island for more than twenty years prior to the filing of the suit herein, has obtained title by adverse possession against the county. An attempt was made on the hearing to prove that the land in question came within the designation of swamp land. There is no satisfactory evidence as to what part of the southwest quarter of section 4 would come under the designation of swamp land. No evidence was offered by Watts which tended to establish that the northeast quarter of the southwest quarter of section 4, in which subdivision Watts' island is situated, comes within that designation. The act of Congress provided that lists and plats of swamp and overflow land should be made out by the Secretary of the Interior, and that in so doing all legal subdivisions the greater part of which is wet and unfit for cultivation should be included in the lists and plats, and those in which the greater part of the subdivision is not so affected should be excluded therefrom as a whole. The subdivisions contemplated were under the law 40-acre tracts. (*Buena Vista County* v. *Railroad Co.* 112 U. S. 165.) The evidence shows that the entire Watts' island was in the northeast quarter of the southwest quarter of section 4. The plat and survey of 1838 show it was not included in the survey, and according to the plat the 40 acres in the northeast quarter of the southwest quarter of section 4 lie in Pistakee lake, which is navigable. There is no evidence to show the character of this 40 acres other than a plat showing Watts' island to be a well-defined island, with timber growing thereon. All the evidence shows that Pistakee lake, which covers a portion of the southwest quarter of section 4, is a navigable lake, and, of course, cannot be considered swamp land. The record does not show what proportion of the quarter section not in the bed of the lake is swamp or overflow land. The record

shows that there has been no designation of this land as swamp or overflow land or a refusal to so designate it.

While the rule is that if the Secretary of the Interior has not designated a tract as swamp land and refuses to do so, and has not decided that the tract is not swamp land, it may be shown by parol, on behalf of the State or one claiming thereunder, as against a wrongful claimant, that such tract is of the character defined in the act. (*Fuller* v. *Shedd, supra.*) The record here falls far short of a situation of that kind. As we have seen, it does not show a refusal on the part of the government to act, nor that the character of the land in question is that of swamp land. Unless it is shown that the same is swamp land either by the action of the Department of the Interior, or, in case of refusal to act, by evidence establishing it, appellants' contention that this land was conveyed to Lake county cannot be sustained. We are of opinion that the record does not disclose that the land ever became the property of Lake county as swamp land. It is not contended that appellants ever acquired title from Lake county by conveyance or otherwise, and they only claim title by adverse possession. Obviously, if Lake county never owned Watts' island, adverse possession can not run against it. Lake county did not own it, and, as we have seen, the patent to Walker did not include it.

The only remaining ground upon which appellants claim a right to a decree in their behalf is that of adverse possession. It is admitted that adverse possession will not run against the United States government, and therefore, under this view of the record, it is evident that there was no one against whom the statute relating to adverse possession could begin to run until the patent was issued to Hale, in 1891. Assuming that Watts was in actual possession from 1883, his possession could not be adverse until the patent was issued to Hale. The English doctrine that there can be no adverse possession against the crown is made applicable in this country to the United States government and

has been recognized by this court in different cases. *Hughes* v. *Stevers,* 95 Ill. 391; *Spellman* v. *Curtenius,* 12 id. 409; *Cook* v. *Foster,* 2 Gilm. 652.

The original bill in this case was filed to the March term, 1902. The hearing was had in 1905. It will be seen that granting that the possession of Watts was adverse from 1891, the required time had not elapsed to complete the running of the statute. It is contended, however, that up to the time of the hearing Watts had been in possession of this land for twenty-two years; that he went into possession in 1883 and remained in possession thereafter. Adverse possession which is required to constitute a bar to the assertion of title by the legal owner must contain five elements: First, the possession must be hostile or adverse; second, actual; third, visible, notorious and exclusive; fourth, continuous; and fifth, under claim of ownership or color of title,—and this must continue for a period of twenty years. (*Haley* v. *Johnson,* 292 Ill. 525; *Zirngibl* v. *Calumet Canal and Dock Co.* 157 id. 430.) The proof to overcome the presumption in favor of the true owner and to establish adverse possession must be clear, strict, positive and unequivocal. (*Stowell* v. *Lynch,* 269 Ill. 437; *Horn* v. *Metzger,* 234 id. 240.) Watts had not been in possession for twenty years prior to the filing of appellee's bill herein. When Watts made application to the United States government for a survey and sale of Watts' island he in fact admitted that the title to the property was not in himself but in the United States government. His petition refers to Watts' island as an island in Pistakee lake, north of Nippersink creek, in section 4, and that it has never been surveyed by the United States government, and he asks that it be surveyed so it might be brought into market for disposal according to the laws of Congress and the regulations of the general land office. Therefore, even if it were true, as contended by appellants, that this land became

the property of Lake county under the Swamp Land act, and granting that Watts took possession thereof under claim of ownership in 1883, his application to the government was a break in his claim of ownership, and title by adverse possession cannot be thus established. ·

The circuit court did not err in finding the title to this land to be in the Wilkinsons, and the decree of that court will be affirmed.

*Decree affirmed.*